THOMAS F. DOHERTY *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF DES PLAINES, Defendant-Appellee.

First District (4th Division)   No. 62720

Opinion filed October 27, 1976.

Morton C. Kaplan, of Chicago, for appellants.

Di Leonardi & O'Brien, Ltd., of Des Plaines, for appellee.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

The plaintiffs brought this action for a declaratory judgment in the Circuit Court of Cook County against the defendant, City of Des Plaines, to have the court declare the R-2 single-family zoning invalid as it applies to the subject property and permit the use of the subject property for

office purposes. The plaintiffs are Thomas and Constance Doherty, the owners of the property, and Jack L. Kemmerly, the contract buyer of the property.

After the appeal was taken in this case the property was again sold by the Dohertys for $68,000, with Jack L. Kemmerly acting as the broker. An affidavit signed by one of the new purchasers indicated the purchase was largely predicated upon its potential commercial use, and it is the intent of the purchasers to use it for limited office use at this time.

The issue for review is whether the R-2 single-family zoning applicable to the subject property is arbitrary and discriminatory and bears no relationship to the public welfare.

The subject property is located on the east side of Elmhurst Road, Illinois State Highway Route 83, approximately one-half mile north of the Northwest Toll Road and Elmhurst Road interchange. The property is approximately eight-tenths of an acre in size and has a frontage of 174 feet along Elmhurst Road and a depth of 200 feet. The property is improved with a large, six-bedroom house which was originally a farmhouse. The house is 40 to 60 years old and is structurally sound and reasonably well maintained. There are two outbuildings: a large frame barn and a smaller frame garage.

The property is surrounded on three sides by the Devonshire subdivision and is abutted by nine homes. The subdivision contains over 100 homes and covers 40 acres. The house on the subject property is set back farther from the road than the adjacent houses, but unlike the subdivision homes which front on side streets, the only access to the property is from Elmhurst Road.

Elmhurst Road is a busy four-lane highway with a mountable median. At a distance of 350 feet to the north and 325 feet to the south of the property there are commercial districts with such uses as restaurants and gas stations. The property immediately across the road to the west is vacant, but it is zoned for business by the Village of Mount Prospect. The property to the southwest is zoned R-X residential, which is the highest residential use designated by Mount Prospect. However, R-X zoning is automatically assigned to property which has been involuntarily annexed, and in that case the zoning may be subject to change. There was no evidence with respect to which of these circumstances existed.

Jack Kemmerly, a real estate broker who owns ten offices in the northwest suburbs, contracted with the Dohertys to buy the subject property for $82,500 contingent upon obtaining commercial zoning. He testified the proposed use of the property is for general office use, mainly real estate. He would use the six bedrooms as private offices for sales persons and brokers, and the outbuildings would be used for parking and

the storage of equipment. There is a stockade fence approximately six feet high on the north and east sides of the property, and he proposed to continue the fencing for the south side. He would asphalt the existing gravel driveway, and make other cosmetic improvements, but he also intended to construct a 10- or 12-foot sign with neon lighting if local ordinances permitted. The offices would be open from 9 a.m. to 9 p.m. seven days a week. Kemmerly testified Mr. Doherty was in the plumbing business and operated his business out of the house.

The property was put on the market for six months in 1974 at a price of $85,500. There were some inquiries but no written offers, and no specific attempt was made to advertise the property for single-family use.

Gerald Estes, an architect and city planner, testified for the plaintiff. He stated the subject property takes its character from its frontage along Elmhurst Road, and the dominant character of this stretch of road is one of high commercially oriented uses that draw on the traffic pattern in the area. He stated the subject property under its current zoning would be an isolated piece of residential development fronting on Elmhurst Road. The subject property does not have any direct connection to the residential development which surrounds it, and the property is more suited for a commercial use. The highest and best use for the site would be for a limited professional use of an office type and would not create a detrimental effect on the surrounding residences.

He testified it is possible to develop the property into three lots with variations in lot size or frontage, but even if it were possible to develop the lots without variations, the property would still be most suitable for a professional or commercial type use. Estes recommended placing a stockade fence along the south side of the property to screen the three residences which abut the property at that location because of their shallow back yards.

William A. McCann, a real estate appraiser and consultant, testified on behalf of the plaintiff. He stated the character of the area has changed from rural residential to that of highway oriented commercial. In his opinion the subject property was not physically worked into the Devonshire subdivision because there is no means of ingress or egress except for Elmhurst Road. McCann stated the highest and best use would be for highway oriented commercial office use, particularly of the type proposed in this lawsuit. The buildings on the site could be adapted for the type of use proposed, and it would be a far less extensive use than has been made of many of the parcels fronting on Elmhurst Road.

He testified the value of the property under the current zoning is in the range of $45,000 to $50,000, and the value of the property for the proposed use is in the range of $100,000. He stated the proposed use would not be

deleterious to the uses, trends, or values of the surrounding property and it would not impede the orderly development of the area in which it is located.

Theodore Kowalski, a real estate appraiser and consultant, testified on behalf of the defendant. He said the subject property is worth $60,000 as currently zoned, and as proposed for office purposes would have a value of $80,000. Even though the property is not a preferred residential location, he stated the highest and best use is for single-family residential zoning with the interim use of the existing buildings until such time as the property were subdivided and sold as individual residential sites. He stated the nine single-family residences which abut the subject property most, influence the property, and if the proposed use were granted, there would be a five percent depreciatory effect on three of the adjoining properties and a 10 percent depreciatory effect on the remaining six adjoining properties.

Michael Richardson, a land planner and director of land use and planning for the City of Des Plaines, testified on behalf of the defendant. He stated the highest and best use of the subject property is for single-family residential use because the property takes its character from the subdivision which surrounds it on three sides and extends 350 feet to the north and 325 feet to the south. He testified that changing the zoning to commercial would represent the classic case of spot zoning. Commercial uses should not be permitted in the area because it might set a precedent for the remaining single-family homes which could result in commercial zoning on the residential streets which would pose a safety hazard.

Thomas B. Fitzgerald, a city planning and zoning consultant, testified on behalf of the defendant. He stated the highest and best use for the subject property is for single-family purposes, with the present buildings as they exist now, because the subject property is an integral part of the subdivision. The commercial strips which exist to the north and south are not incompatible because they are grouped together, and the size of the residential use is such that it represents an appropriate use. He stated that some of the single-family uses abutting the property have very shallow back yards, and there is a direct relationship between the property and the adjacent single-family residences. A change to a commercial use would be spot zoning and would be very incompatible with the surrounding residential neighborhood.

Pamela Wiberg, who lives with her family in the house which abuts the subject property to the north, stated the family did not want commercial property in their back yard because the traffic would be a hazard to their children, and because it would depreciate their property. She testified she saw no evidence the Dohertys had run a business out of their home.

In finding for the defendant the court made the following statement: "It is the decision of this Court that the subject property takes its character from the surrounding residential uses, specifically the subdivision which contains it on all three sides and the nine abutting residences. I readily accept the proposition that this may not be the most desirable residential property in that area by reason of its proximity or its opening on Elmhurst Road. However, I recognize Elmhurst Road as a valid and existing zoning boundary.

\* \* \*

[I] would like to state for the record that I feel that this is an extremely close question."

■■ The plaintiffs contend the zoning of the subject property as R-2 single family is arbitrary and discriminatory and bears no relationship to the public health, safety, and welfare. We first note the existing structure is a sound residential building surrounded by nine other residences. Although the busy highway prevents the subject property from being a preferred location for single-family use, there is no dispute that it has been a serviceable house for many years and remains so today. The experts are divided on whether the property takes its character from the surrounding residences or from the highway and on whether the subject property is integrated into the subdivision. The fact that property is located upon a main traffic artery does not invalidate a zoning ordinance which restricts its use to residential purposes. (*La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415; *Cosmopolitan National Bank v. Village of Mount Prospect* (1961), 22 Ill. 2d 463.) Zoning must begin and end somewhere and the courts have refused commercial intrusions into residential areas even though the subject property abutted on busy streets. *Duryea v. City of Rolling Meadows* (1970), 119 Ill. App. 2d 445; *Buhrmaster v. County of Du Page* (1973), 16 Ill. App. 3d 212.

■■ The plaintiff's real estate expert testified the property was worth only \$45,000 to \$50,000 as a residential property, but would be worth \$100,000 under the proposed commercial use. The defendant's appraiser testified the property was worth \$60,000 as zoned and \$80,000 for the proposed use. The contract entered into by Jack Kemmerly and the Dohertys, an arm's length transaction, established the commercial worth of the property at \$82,500. Thus, by zoning the property as commercial the Dohertys could have gained as much as \$37,500. But the courts have recognized that in almost every zoning case a plaintiff's property would be worth more if it were zoned other than single-family residential (*Bolger v. Village of Mount Prospect* (1957), 10 Ill. 2d 596; *Gregory v. City of Wheaton* (1961), 23 Ill. 2d 402), and that factor standing alone will

not be decisive. It is also necessary to determine the destruction in value of the surrounding properties. Although the plaintiffs' expert testified there would be no reduction in values, Theodore Kowalski testified six of the houses which abut the subject property would be depreciated by ten percent and three would be depreciated by five percent if commercial zoning were granted. Using this formula and assuming the surrounding homes are worth between $45,000 and $50,000, the total depreciation would amount to between $33,750 and $37,500. It is apparent that the possible gain might be cancelled out by the loss to the adjacent property owners.

■■ The Dohertys purchased the property as a residence and would not be prejudiced if they had to sell the house for its residential value. In fact, they were able to sell the property for $68,000 to people who were speculating on the possibility of commercial zoning, and it appears they received a premium for that possibility. It is evident they have not been prejudiced. The new owners purchased the property knowing of the judgment of the circuit court; therefore, they cannot be prejudiced by the continuation of a residential classification.

■■ The standard of review in cases where there is a substantial difference of opinion after a determination of all the facts concerning the reasonableness of a classification has most recently been stated in the case of *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 179, 180. In that case the Illinois Supreme Court stated:

> "It is clear from many holdings of this court that a zoning ordinance will be upheld if it bears any substantial relationship to the public health, safety, comfort or welfare. An ordinance will be presumed to be valid, and the one attacking an ordinance bears the burden of demonstrating its invalidity. The challenging party must establish by clear and convincing evidence that the ordinance, as applied, is arbitrary and unreasonable and bears no substantial relation to the public health, safety or welfare. (*County of Cook v. Priester*, 62 Ill. 2d 357, 367-68; *Duggan v. County of Cook*, 60 Ill. 2d 107, 110-11; *Grobman v. City of Des Plaines*, 59 Ill. 2d 588, 592.) The foundation for this judicial posture was described in *La Salle National Bank v. City of Evanston*, 57 Ill. 2d 415, 428:
>
> 'These rules are based upon a recognition that zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare. (*People ex rel. Joseph Lumber Co. v. City of Chicago*, 402 Ill. 321; *Morgan v. City of Chicago*, 370 Ill. 347.) Where it appears, from all the facts, that room exists for a difference of opinion concerning the

reasonableness of a classification, the legislative judgment must be conclusive. (*Krom v. City of Elmhurst*, 8 Ill. 2d 104.)' See also *Grobman v. City of Des Plaines*, 59 Ill. 2d 588, 593."

After a complete review of the record we find the plaintiffs in this case have not met their burden of establishing by clear and convincing evidence that the zoning classification is invalid and bears no relationship to the public welfare.

For these reasons, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

JOHNSON, P. J., and ADESKO, J., concur.