LASALLE NATIONAL BANK AND TRUST CO., Trustee, *et al.*, Plaintiffs-Appellees, *v.* THE COUNTY OF COOK, Defendant.—(GOLF-GREENWOOD GARDENS IMPROVEMENT ASSOCIATION *et al.*, Intervenors-Appellants.)

First District (2nd Division)    No. 80-139

Opinion filed March 17, 1981.

Mark H. Mennes, of Arnold & Kadjan, of Chicago, for appellant Golf-Greenwood Gardens Improvement Association.

Richard J. Troy, of Chicago, for appellant Village of Niles.

Jerome S. Schain and Daniel H. Brown, both of Chicago (Schain, Burney & Kenny, of counsel), for appellees.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

This appeal is taken by certain intervenors and the village of Niles from a declaratory judgment finding that the R5 Single-Family Residence classification of the Cook County Zoning Ordinance is arbitrary, unreasonable and unconstitutional as it applies to plaintiffs' property. The principal issue raised is whether plaintiffs fulfilled their burden in demonstrating with clear and convincing evidence that the zoning ordinance was invalid as applied to their property. For the reasons which follow, we reverse.

The subject property is a 1.5 acre, L-shaped tract located on the southwest corner of Elm Drive and Greenwood Avenue within the County of Cook. Elm Drive is a residential street interposed between the subject property and Golf Road, and is separated therefrom by a landscaped median strip planted with trees and shrubbery. The subject property is part of a single-family home development located south of Elm Drive, west of Greenwood Avenue, north of Emerson Street and east of Western Avenue. Seventy-four residential lots have been improved with 72 single-family residences within that area. The subject property is itself improved with single-family homes on each lot. The entire property within the above-described development is currently zoned R5 Single-Family Residence under the Cook County Zoning Ordinance, which permits single-family detached residences to be constructed on individual lots of 10,000 square feet or more in area.

When the development began in 1939, a corporation was formed by the homeowners, entitled the Golf-Greenwood Gardens Improvement Association. This Association owns, maintains and, through a contractor, operates a private water and sewer system and is involved in civic activities in the area. The Association has actively objected to commercial zoning both within the above-described boundaries and outside of its limits. Thus far, there has been no commercial intrusion within the Association's boundaries.

The area north of Golf Road to the west of Greenwood has been strip zoned by Cook County as a C4 General Commercial District and contains shopping and restaurant establishments, as well as an automobile service station at the northwest corner of Golf and Greenwood. The C4 strip extends westward from Greenwood approximately two-thirds of the distance to Western. The balance of the property north of Golf and west of the C4 strip is zoned R7 General Residence District and is improved

with residential and apartment uses. North of the C4 strip is located an R8 General Residence District, improved with apartment structures. To the west of Western, south of Golf Road, is an R1 Single Family Residence District located within the village of Niles and is developed with apartment, park and single-family residence uses. To the south of Emerson between Western and Greenwood is an R1 Single-Family Residence District within the village of Niles and is so improved. At the east side of Greenwood Avenue both north and south of Golf Road is the village of Niles, which has zoned the properties therein contained for B1 Retail Business District and C8 Intensive Commercial District uses, which have been improved with the Mill Run Playhouse and Golf Mill Shopping Center to the south of Golf Road, and an automobile service station, a motel and a restaurant to the north of Golf Road east of Greenwood.

The subject property consists of three lots. One lot, at the southwest corner of Elm and Greenwood, faces Elm and has its east side yard along Greenwood. The other two lots, adjacent and south thereof, face Greenwood, thus forming a short stemmed, long based, L-shaped parcel. The homes constructed on the three subject lots are typical of the construction generally found in the subdivision, but show evidence of deferred maintenance and require repairs. The home on the northernmost lot was purchased in 1962 and was boarded up at the time of trial. The middle lot was purchased in the late 1960s and is rented to a family. The third home was purchased one year prior to trial, in 1978, and is boarded up. The property owners purchased the property with knowledge of the R5 residential zoning classification and the trend of development north and east of the property for commercial uses. Plaintiffs also twice previously applied for zoning changes to commercial zoning, which were denied. No effort was made by plantiffs to sell any of the properties under the existing zoning.

The most recent application for change in zoning made by plaintiffs sought to set aside the R5 Single Family Residence District and to impose a C4 General Commercial District upon the subject property. Hearings were held before the Cook County Zoning Board of Appeals on January 19, 1979, at which the villages of Niles and Glenview, the cities of Park Ridge and Des Plaines, and the North Main Fire Protection District filed objections. The Zoning Board of Appeals heard evidence relative to the existing zoning and uses in the area, the suitability of property for permitted uses, the trend of development and the issues of property values and concluded that "* * * the commercial development proposed would be a proper and reasonable use of the subject property, but because of the unified objections of the neighboring homeowners' association and nearby villages, the Zoning Board of Appeals unanimously

recommends to the Board of County Commissioners that the application be denied."

In corrected findings, the Board of Appeals observed that the villages of Niles and Glenview objected to the zoning change because the request was for spot zoning and they feared that the rezoning would lead to an extension of the strip commercial zoning along both Golf and Greenwood which would diminish the use and enjoyment of the abutting residential property. The board also noted that the city of Des Plaines based its objection on a restrictive covenant covering the property which limits the use of the land to single-family purposes, and expressed concern over traffic congestion. Although the city of Park Ridge objected, it did not include reasons for its objection. The North Main Fire Protection District objected solely on the basis that the plan presented called for a cul-de-sac on Elm Drive, which would cut off access for emergency vehicles from Greenwood Avenue.

The Board of County Commissioners denied the application for change in zoning. Plaintiffs thereafter filed this action for injunction and declaratory judgment. The villages of Niles and Glenview, the city of Park Ridge, and the Golf-Greenwood Gardens Improvement Association were permitted to intervene in the lawsuit.

The use proposed for the subject property is the construction of an office building to contain approximately 21,600 square feet with a height of from 24 to 25 feet. The proposed building structure would itself be L-shaped and would traverse portions of each of the three lots, substantially conforming to the L-shaped configuration of the parcel. There would be off-street parking provided to the north of the proposed building as well as to the south and west thereof. Two driveways would give the property access to Greenwood. In addition to office space, among the proposed uses would be banking, restaurant and banquet establishments, with or without a bar. For 40 feet of its length at its west side, the building would be within 10 feet of a neighboring residential lot. A six-foot-high solid fence is proposed to be constructed along the westerly and northerly lot line boundaries with landscaping.

Plaintiffs' evidence in the circuit court revealed that the subject property is owned by LaSalle National Bank and Trust Company and Elgin National Bank, as trustees, with George A. Moser, James Moser and the estate of George A. Moser as beneficiaries under both trusts. George A. Moser, an experienced builder-developer, testified that the extreme commercial development over the past 15 years in the area of the subject property has rendered it unsuitable for single family use. The northernmost house on the subject property was permanently damaged by tenants in 1968 or 1969 and has sustained frozen plumbing and is uninhabitable.

The middle house is in fair condition and is occupied by tenants. The southernmost house is not tenanted, contains major structural defects and is uninhabitable. No repairs to these homes have been attempted, nor has any effort been made to sell them.

Thomas J. Buckley, an urban planner and zoning consultant, who is president and owner of Carl Gardner and Associates, described the proposed site plan. In his opinion the highest and best use of the subject property is for commercial development, taking into consideration the location of the property at the intersection of two major thoroughfares, the traffic situation, the presence of commercial uses on the other three corners of the intersection and the trend of development for commercial use in the general area. He believed that the proposed use would have no further adverse impact on surrounding properties than they had already sustained by virtue of the establishment of commercial uses along Golf Road, and a 12-story highrise to the west of Western Avenue. It was his contention that there would be no domino effect should the proposed commercial use be established on the subject property with respect to other single-family zoned properties in the area; however, he conceded that the uses to the south of the subject property on the west side of Greenwood might be developed commercially should the proposed use be allowed.

An appraiser, Terrence M. O'Brien, testified that in his opinion the highest and best use of the property is for an office-type building such as that proposed by plaintiffs, in consideration of certain factors: uses in the area are more intense than those permitted by the R5 zoning; the trend of development in the area has been for commercial and multiple-family uses; the site is located at the intersection of two major thoroughfares; the Cook County comprehensive plan calls for more intense use of the property than that which currently exists; the Cook County Zoning Board of Appeals findings; and his opinion that the subject property would be worth $400,000 if the proposed use were granted but was worth only $200,000 as presently zoned. He testified further that the homes situated on the subject property need only cosmetic repairs; if they were properly maintained their value would increase to as much as $275,000 to $300,000.

A traffic control consultant and civil engineer, Robert H. Miller, testified for plaintiffs that both Golf and Greenwood would be widened, which would eliminate some traffic problems. Golf carried 32,000 vehicles per day and Greenwood carried 23,000 vehicles per day. He gave no description of the points at which the studies were taken on either Golf or Greenwood. He predicted no adverse impact on the surrounding properties because of traffic from the proposed use. His studies were conducted during both morning and evening rush hours.

The intervenors called William McCann, an appraiser, who testified

that the highest and best use of the subject property is for single-family uses. If the property were to be isolated from the community, which he did not think could be done, its highest and best use would be for commercial purposes. He took into consideration the proximity of the property to commercial development in the area, the two arterial roads, and stated that if the properties were vacant, they probably would not be developed for single-family uses. He believed that they could remain single family for the near-term future for from five to 10 years. He had never been inside the three homes located on the subject property but was of the opinion that they needed only cosmetic repairs. He described the north side of Elm Drive as being screened by foliage so that the commercial areas on the north side of Golf were not in view of the subject property. In McCann's opinion, the property was worth as much as $235,000 as presently zoned and $320,000 if used as proposed. There was a present need and market for single-family homes in the area.

A land use planner, Rolf C. Campbell, testified for intervenors that there were three trends of development in the general area of the subject property; single-family, multiple-family and commercial. In his opinion, the proposed use would have an adverse effect on the surrounding residential properties. The proximity of Golf Mill Shopping Center already has had an effect on it. The subject property's location on Elm and Greenwood Avenue had minimal effect, because it is truly located on Elm, rather than Golf, where the major intersection is located. In his opinion, the parking to be provided for the proposed use was inadequate for traffic flow and the lighting in the parking area, screening and proposed buffer zones were inadequate and needed improved revision.

The president of Golf-Greenwood Gardens Improvement Association, Carol Marker, testified that 72 families are members of the Association. The Association pays for the maintenance of sewer and water systems. She opposed the commercial use of the subject properties because it would violate the single-family environment, and make it unsafe for children. She was aware of the existing commercial uses along the east side of Greenwood and of the Golf Mill Shopping Center when she bought her home. Two other homeowners and residents of the Golf-Greenwood area testified that their back yards were adjacent to the subject properties and that the proposed use would interfere with their privacy. The proposed use, they testified, is an infringement on the residential zoning classification that the residents had relied on when they purchased their homes.

The trial court found that plaintiffs had overcome the presumption of validity of the Cook County Zoning Ordinance as applied to the subject property; that the ordinance bore no reasonable relationship to the public welfare and was therefore unreasonable and invalid; that the trend of

development in the area was predominantly commercial; that the proposed commercial use was a reasonable and appropriate development for the subject property and was in conformity with existing land use and zoning; and that the highest and best use of the subject property was for commercial uses as proposed. The court found that there was insufficient evidence that the financial loss to the owners was justified by any counterbalancing gain to the public health, safety and welfare and that the subject property was not suitable for single-family development. Only the captioned intervenors present this appeal.

■■ Intervenors argue that plaintiffs failed to demonstrate the invalidity of the present zoning ordinance as applied to the subject property, relying upon the presumption that prevails in favor of existing zoning and the principle that one who attacks a zoning ordinance must prove by clear and convincing evidence that the ordinance is, as applied to their property, arbitrary, unreasonable and without a substantial relationship to the public health, safety, morals or welfare, citing *Littlestone Co. v. County of Cook* (1974), 19 Ill. App. 3d 222, 311 N.E.2d 268, *cert. denied* (1975), 420 U.S. 929, 43 L. Ed. 2d 401, 95 S. Ct. 1130. Both plaintiffs and intervenors agree that the validity of an existing zoning ordinance must be measured against the factors enumerated in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65. We shall refer to those factors as they apply to the facts presented. Although no one factor is controlling, "[o]f paramount importance is the question of whether the subject property is zoned in conformity with surrounding existing uses and whether those uses are uniform and established." *La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 309, 388 N.E.2d 388.

■■ The evidence shows that the area to the west and south of the subject property is uniformly zoned R5 Single-Family Residence District and is fully developed with 72 single-family homes in conformity with that zoning. Plaintiffs' property is located at the cutting edge of R5 zoning and uses and is simply adjacent to more intensive zoning and businesses. Business and commercial development had occurred in the general area north and east of the subject site; however, none have successfully intruded into the Golf-Greenwood Gardens area which has maintained its residential character since it was formed in 1939. The areas bordering the Golf-Greenwood Gardens development to the south and west are zoned R1, R5 and R7 and retain their residential character. There was testimony by expert witnesses that north of the strip commercial development on the north side of Golf Road were multiple-family residences and further north on Greenwood Avenue were single-family residences east of commercial developments. There was further testimony that the only ongoing construction in the area of the subject property at the time of

trial was neither business nor commercial in character but single-family homes four blocks to the north. In view of the foregoing considerations, the maintenance of single-family zoning on the subject property cannot be said to be arbitrary or unreasonable, or without any basis in the public health, safety, morals and welfare. The trial court's holding to the contrary is against the manifest weight of the evidence relative to this factor. *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 377 N.E.2d 21.

The factual situation in *Bennett v. City of Chicago* (1962), 24 Ill. 2d 270, 181 N.E.2d 96, is illustrative of the importance of maintaining the integrity of zoning within a given area. There, the subject property consisted of three vacant lots fronting on Irving Park Road in an R2 Single-Family Residential District, with the balance of the block having been zoned similarly and having been fully developed with 24 single-family residences, parallel with the instant case. Plaintiff there proposed to construct multiple-family residences and relied upon the intensity of traffic along Irving Park Road and the business and commercial zoning and uses situated across that street to the south and across Pittsburgh Avenue, the first street to the west. The supreme court found that since the existing uses in the block containing that plaintiff's property were all single-family dwellings and conformed to the zoning classification, the suitability of such property for the zoned purposes was thereby clearly demonstrated, buttressed by the fact that the area north and west thereof was also fully developed with single-family residences. The court concluded that the residential character of the property was not changed by the zoning classifications and uses, across the roadways, devoted to commercial and multiple-family use. To the same effect is *Georgen v. Village of Mount Prospect* (1978), 65 Ill. App. 3d 512, 382 N.E.2d 523, involving single-family zoning across an arterial road from a major shopping center. Here, 72 single-family residences exist in the area bounded by Elm on the north, Greenwood on the east, Emerson on the south and Western on the west, which similarly attests to the suitability of the subject property for the zoned uses. The situation in the present case is even stronger than in *Bennett* and *Georgen* since the subject property is not vacant, but has indeed been improved with single-family residences.

■■ With regard to the factor contemplating the extent to which property values are diminished by restrictions applying to the subject property, plaintiffs emphasize that the probable higher value that could be realized if the proposed use were to be allowed favors their position. The witnesses agreed that if the proposed use were to be granted, the subject property would be worth more than under the existing zoning classification, to varying degrees. Plaintiffs obtained the subject property with full knowledge of the preexisting zoning classification. Although they are

not thereby precluded from challenging the validity of a zoning ordinance as applied to their property, the fact that the beneficiaries are experienced land developers and purchased the property in the face of an existing zoning restriction places plaintiffs in a different position than owners who purchased property prior to the enactment of a restriction. (*La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 308; *Grobman v. City of Des Plaines* (1975), 59 Ill. 2d 588, 596, 322 N.E.2d 443.) Further, it is generally acknowledged that in all probability property would be worth more if it could be developed with less restrictive uses than more restrictive uses in every case. (*Grobman v. City of Des Plaines* (1975), 59 Ill. 2d 588, 595.) Plaintiffs' knowledge of the established and ongoing nearby business and commercial development when they purchased their property and its location near major thoroughfares, and their two previous unsuccessful efforts to rezone the property are of further detriment to their position. See, *e.g., La Salle National Bank v. Village of Western Springs* (1964), 30 Ill. 2d 340, 342, 196 N.E.2d 680.

■■ Plaintiffs seek to bootstrap their financial situation by pointing to the condition of the three residential structures on the subject property. Whatever diminution in property values may have occurred, however, may well be due to plaintiffs' disinterest in maintaining those structures. One of the beneficiaries of the trust, Moser, the real estate developer, testified that the northernmost home had been damaged by a tenant who left it in an unusable condition and that the southernmost home had been structurally damaged by the former owners. He gave no analysis as to the actual damage nor any estimate as to the cost of repairs. There is no evidence that he made any attempt to repair the damage, which his own appraiser characterized as merely cosmetic. That appraiser was also of the opinion that if the homes were properly maintained at a level comparable to other single-family residences in the area, those properties would be worth from $275,000 to $300,000. To be compared with this testimony is the range of other expert testimony coming from intervenors' witness which indicated that the property would be worth $320,000 if the proposed use were granted. The difference in value under this evidence is insubstantial and cannot be determinative of the issues. Plaintiffs cannot refrain from performing necessary maintenance or attempting to sell the property for the zoned uses, board up the homes and later complain of financial burdens which they experience by virtue of the condition of those homes under the present zoning. *Amalgamated Trust & Savings Bank v. County of Cook* (1980), 82 Ill. App. 3d 370, 384, 402 N.E.2d 719; *Heller v. City of Chicago* (1979), 69 Ill. App. 3d 815, 387 N.E.2d 745.

■■ The volume of traffic on Golf Road and Greenwood Avenue is cited as another factor upon which to conclude that single-family zoning of the subject property is confiscatory. It has often been held, however, that the

mere existence of busy thoroughfares running alongside property does not make it unsuitable for residential use, whether those roadways are heavily traveled tollways (*La Salle National Bank v. Village of Western Springs* (1964), 30 Ill. 2d 340, 342), or highways (*Du Page Trust Co. v. County of Du Page* (1975), 31 Ill. App. 3d 993, 335 N.E.2d 61), or main traffic arteries (*Amalgamated Trust & Savings Bank v. County of Cook* (1980), 82 Ill. App. 3d 370, 382; *Fairfield Savings & Loan Association v. City of Chicago* (1976), 45 Ill. App. 3d 266, 359 N.E.2d 1040, *appeal denied* (1977), 66 Ill. 2d 625; *First National Bank v. City of Springfield* (1976), 42 Ill. App. 3d 566, 356 N.E.2d 367.) Nor does a combination of arterial streets and adjacent commercial uses render a residential classification invalid. (*Amalgamated Trust & Savings Bank v. County of Cook*; *First National Bank v. City of Springfield*.) Zoning must begin and end somewhere, and arterial streets and main thoroughfares historically have been considered appropriate boundary lines. *Lapkus Builders, Inc. v. City of Chicago* (1964), 30 Ill. 2d 304, 196 N.E.2d 682; *Bennett v. City of Chicago*; *Cosmopolitan National Bank v. Village of Mount Prospect* (1961), 22 Ill. 2d 463, 177 N.E.2d 365; *Doherty v. City of Des Plaines* (1976), 43 Ill. App. 3d 642, 357 N.E.2d 140, *appeal denied* (1977), 65 Ill. 2d 577.

■■ There was testimony that property owners within the Golf-Greenwood Garden area purchased their property both with knowledge of the business and commercial zoning and development to the north and east of them and in reliance upon the zoning restrictions applying to their property. The law recognizes the right of property owners to rely upon the precept that a zoning change will not be effectuated unless it is required for the public benefit. (*Urann v. Village of Hinsdale* (1964), 30 Ill. 2d 170, 195 N.E.2d 63; *Amalgamated Trust & Savings Bank v. County of Cook* (1980), 82 Ill. App. 3d 370, 382; *Ward v. County of Cook* (1979), 68 Ill. App. 3d 563, 386 N.E.2d 309; *Kluse v. City of Calumet City* (1977), 55 Ill. App. 3d 403, 371 N.E.2d 61.) The neighbors objected to the proposed use because of the additional traffic, the accompanying noise, the invasion of privacy and the safety of their children. They are entitled to rely upon the lower density requirements which directly relate to health, safety and morals. *Amalgamated Trust & Savings Bank v. County of Cook* (1980), 82 Ill. App. 3d 370, 383.

■■ From the foregoing it is evident that plaintiffs have failed to meet their burden of demonstrating clearly and convincingly that the R5 single-family zoning classification as applied to their property is arbitrary or capricious and bears no substantial relationship to the public health, safety, morals and welfare. At best, plaintiffs' evidence merely demonstrates that the zoning classification may be deemed fairly debatable. (*Littlestone Co. v. County of Cook* (1974), 19 Ill. App. 3d 222, 239;

*Avenue State Bank v. Village of Oak Park* (1968), 99 Ill. App. 2d 329, 342, 241 N.E.2d 630.) A trial court may not substitute its judgment for that of a local legislative body but is merely to determine whether the legislative decision which resulted in the restriction involves undue invasion of private constitutional rights without a reasonable justification in the public welfare. (*La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 310.) Plaintiffs have failed to establish by clear and convincing evidence that the existing ordinance has that effect. Accordingly, the judgment of the circuit court must be reversed. In view of the result reached, other issues raised by intervenors are of no consequence to the appeal.

Reversed.

STAMOS and PERLIN, JJ., concur.