PARKWAY BANK AND TRUST COMPANY, Trustee, *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF CHICAGO, Defendant-Appellant.

First District (5th Division)    No. 80-3245

Opinion filed June 4, 1982.

Stanley Garber, Corporation Counsel, of Chicago (Robert R. Retke and Maureen J. Kelly, Assistant Corporation Counsel, of counsel), for appellant.

Zulkey & Pikarski, Chartered, of Chicago (Richard E. Zulkey and John J. Pikarski, Jr., of counsel), for appellees.

JUSTICE WILSON delivered the opinion of the court:

This was an action brought against the City of Chicago by owners of property located at 6115-19 North Pulaski Road, Chicago, Illinois, to challenge the constitutionality as applied, of the subject property's R-3 General Residence District zoning classification. The circuit court declared that the zoning classification was unconstitutional as applied to the property in question, and defendant appeals. The issue for review is whether the evidence establishes that the zoning ordinance is unconsti-

tutional as applied to the subject property. We affirm the judgment of the circuit court.

On June 11, 1979, the owners of the property located at 6115-19 North Pulaski filed a complaint for declaratory and injunctive relief against the City of Chicago. The complaint alleged that the subject property is a black-top parking lot located in a R-3 General Residence District. The complaint prayed that the zoning classification be declared unconstitutional and void as applied to the subject property and that the City be ordered to issue the proper permits and licenses to permit construction of an 11-unit condominium complex in conformance with a R-4 General Residence classification.

At the hearing, John McNeill, one of the owners of the property, testified that his proposed plan for the property would meet all R-4 standards, including at least 11 on-site parking places. It was his opinion that the value of the property under R-3 zoning was $48,000; but, if judicial relief was granted, the property would be worth $88,000.

On cross-examination, McNeill stated that he contracted to buy the property for $64,000 and knew it was zoned R-3, but thought it was a good site for the requested zoning change. He would have never bought the property had he thought a change in zoning impossible. He made a survey on Pulaski Avenue for residential density: the nursing home adjacent to his property was R-4; to the south of the site is a townhouse complex with R-3 zoning; and directly across the street were commercial buildings and a gas station with B-4-1 and B-2-1 zoning.

Thomas Buckley, a city planning and zoning consultant inspected the subject property. He described the uses and zoning of the area surrounding the site: the southeast corner of Glenlake and Pulaski was zoned R-2 Single Family Residence; from West Glenlake to West Granville was R-3 General Residence, which consisted of a 10-unit townhouse, the subject property and the Granville Terrace Nursing Center; across from the site was M1-1 zoning with manufacturing and commercial uses. It was his opinion that the highest and best use of the property, given the physical adaptability of the property and the overall character of the area, would be R-4 residential. He stated that the subject property was more like the nursing home, since both faced Pulaski, and the nursing home's occupation exceeded R-3 standards. He also identified the declaratory judgment order which allowed the nursing home to function in a R-4 use. Additionally, he believed that the proposed development of the property would not injure the other uses surrounding it, but would actually improve them.

Patrick Arnold, planner for the City of Chicago, testified that the nursing home to the north of the subject property, though the subject of a

declaratory judgment, was in density closer to a R-3 classification. It was his opinion that the R-3 zoning classification was a reasonable boundary serving as a buffer between property classified as manufacturing on the west side of Pulaski and property classified as single-family residential on the east side of Pulaski.

Summary of other witnesses' testimony revealed that development of the condominium complex on the property would have an adverse effect on the surrounding property, *i.e.*, increased traffic congestion, parking problems and depreciation of adjacent property values. Additionally, testimony revealed that the city council denied the subject property R-4 status.

OPINION

Defendants contend that the plaintiffs failed to establish by clear and convincing evidence that the R-3 General Residence classification was invalid as applied to the subject property.

■■ The constitutional challenge to a zoning ordinance must be measured against the well-established rules. There is the presumption of validity in favor of existing zoning ordinances, and one who attacks the validity of an ordinance must prove by clear and convincing evidence that the ordinance, as applied to their property, is arbitrary, unreasonable and without a substantial relationship to the public health, safety, morals or welfare. (*Wundsam v. Gilna* (1981), 97 Ill. App. 3d 569, 422 N.E.2d 1109; *LaSalle National Bank & Trust Co. v. County of Cook* (1981), 94 Ill. App. 3d 341, 418 N.E.2d 932.) This rule recognizes that zoning is primarily a legislative function, and the court's role is to determine if the exercise of this function invades private constitutional rights without reasonable justification in the public welfare. (*Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 354 N.E.2d 899.) Further, the standard of review in zoning cases, as in other cases, is that the finding of the trial court will not be disturbed on review unless against the manifest weight of the evidence. (*Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 426 N.E.2d 1276.) In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *In re Application of County Collector* (1978), 59 Ill. App. 3d 494, 375 N.E.2d 553.

■■ The factors to be considered in determining the validity of a zoning ordinance are (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the

subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned, considered in the context of land development in the vicinity of the subject property. (*La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65.) Two additional factors to be considered in determining the validity of a zoning ordinance are the care with which the community has undertaken to plan its land use development and the evidence or lack of evidence of community need for the use proposed by plaintiff. (*DeMarie v. City of Lake Forest* (1981), 93 Ill. App. 3d 357, 417 N.E.2d 641.) However, no single factor is controlling and the validity of each zoning ordinance is determined by its own facts and circumstances. *Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48.

With these principles as a frame of reference to assess the trial court's determination of the invalidity of the zoning ordinance in this instance, the evidence demonstrates that area is a patchwork of different zoning classes and legal nonconforming uses. On the west side of Pulaski from Peterson Avenue to Granville is zoned M1-1, a restricted manufacturing district; continuing north to Rosemont Avenue, is a B2-1 classification, restricted retail; north of Rosemont for half a block the zoning is R-2; going south beyond Glenlake to Peterson the zoning class is R-2, Single Family Residence; on the east side of Pulaski between Granville and Glenlake, two-thirds of the block is occupied by a 190-bed nursing home with an excepted R-4 use in an R-3 zoning classification; immediately south of the nursing home is the subject property presently used as a parking lot. This use is not permitted under R-3, but is a special use allowed by the Chicago Zoning Board of Appeals. Finally, south of the site is a 10-unit townhouse complex conforming to R-3 use but facing Glenlake Avenue, not Pulaski.

Thus, the existing uses and zoning of surrounding property are not predominantly R-2 and uniform as defendant contends, but a mixture of zoning patterns. When considering this diversity in zoning, a more intense use of the subject property would seem reasonable.

Defendant relies on *LaSalle National Bank & Trust Co. v. County of Cook* (1981), 94 Ill. App. 3d 341, 418 N.E.2d 932, and *Bennett v. City of Chicago* (1962), 24 Ill. 2d 270, 181 N.E.2d 96, to support its position. In *LaSalle National Bank & Trust Co.*, plaintiff sought a zoning change for a proposed commercial use. The trial court granted the requested change, and we reversed, finding that the surrounding existing uses were primarily residential in character, and the subject property itself had been improved with single-family residences, unlike the instant matter. Likewise, in *Bennett*, our supreme court found that the integrity of the R-2 zoning in the given area, buttressed by the fact that the surrounding area

north and west was similarly zoned, warrants upholding the present classification. In the present case, there are legal nonconforming uses even within the R-3 zone classification.

Testimony also revealed that under the present zoning classification, the subject property was valued at $42,000 as a vacant improved lot and that it would be more valuable if rezoned and developed. Thus, plaintiffs' property value seems unreasonably reduced because of the present zoning classification, and this poses an economic hardship upon the owners.

Further, another factor in determining the reasonableness of the present zoning ordinance is whether that classification has a substantial relationship to the public health, safety and welfare. The trial court did consider defendant's concern about the additional traffic and auto congestion, but the evidence also demonstrated that Pulaski is a heavily traveled thoroughfare and that the townhouse properties faced Glenlake Avenue and not Pulaski. Plaintiff-owners indicated that a parking facility would be included in the proposed development of the property. Moreover, since the subject property is presently a vacant lot used as a parking facility, development of this site would presumably enhance the value of the surrounding single-family residences. As such, the trial court could reasonably conclude that the proposed change would not substantially change the character of the area, but in fact, would improve it.

■■ Our review of the record indicates that the trial court considered these factors and other factors enumerated in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, and subsequent cases and concluded that the validity of the ordinance was overcome by clear and convincing evidence. We do not find this determination to be against the manifest weight of the evidence and are, therefore, affirming the decision of the circuit court.

Affirmed.

LORENZ and MEJDA, JJ., concur.