MOBIL OIL CORPORATION, Plaintiff-Appellee, v. THE CITY OF ROLL-
ING MEADOWS, Defendant-Appellant.

First District (1st Division)   No. 1—89—3532

Opinion filed May 13, 1991.

Rose & Ross, Ltd., of Rolling Meadows (Donald M. Rose and Kathleen Ross, of counsel), for appellant.

Sachnoff & Weaver, Ltd., of Chicago (Steven H. Cohen, Carole C. Cooke, and Joel M. Neuman, of counsel, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Mobil Oil Corporation (Mobil) brought a declaratory judgment and injunction action against the City of Rolling Meadows (the City) because the City denied Mobil's "special use" application which would have allowed Mobil to add 152 feet to Mobil's snack shop (mini-mart), and to build and operate a car wash. Following a bench trial, the trial court declared the City's ordinance void as it pertained to Mobil and ordered the City to issue a permit for Mobil's special uses.

In 1986, Mobil purchased a parcel of property (the subject property) that was approximately 26,000 square feet at the southwest corner of Hicks Road and Euclid Avenue in the City. On the subject property, there was an existing service station that had one building

containing two service bays, a snack shop and two gasoline pumping islands.

After purchasing the subject property, Mobil wanted to demolish the existing gas station and build a new self-serve gas station, a 552-square-foot mini-mart and a car wash. However, the subject property's zoning ordinance considered gas stations a "special use." Consequently, Mobil applied for a special use permit and requested the City to grant (i) a 12-foot rear yard, (ii) a side yard deviation from 15 feet to 3 feet to permit the car wash, (iii) a 15-foot front yard deviation, and (iv) a trash storage enclosure.

The City granted in part and denied in part Mobil's special use application. The City granted a special use for the gas station, granted Mobil the right to construct a 400-square-foot mini-mart which was a 100-square-foot deviation from the 300 square feet allowed by zoning ordinance, deviations from the side and rear yard requirements, a deviation from the prohibition against front yard parking and permission for an enclosed storage area. The City, however, denied Mobil's request for an additional 152 square feet for its mini-mart and denied the car wash.

Thereafter, Mobil filed a declaratory judgment and injunction action against the City, contending (1) that the City's denial of an additional 125-square-foot deviation for its construction of mini-mart and (2) that the City's denial of the permission for car wash was arbitrary and unreasonable. On October 19, 1989, the parties participated in a hearing with respect to Mobil's action.

At the hearing, Dennis Huffaker, a Mobil field engineer, was called to testify on behalf of Mobil with respect to the mini-mart and the car wash. The City, however, objected, contending that it would be unfair for Huffaker to testify because Mobil only disclosed its intention to call Huffaker on October 11, 1989. In response, Mobil argued that it did not disclose Huffaker earlier because Huffaker was never going to testify, asserting that another witness was going to be called but that the intended witness could not be located. The intended witness was not a Mobil employee and was not deposed. Consequently, Mobil argued that Huffaker would testify instead of its intended witness. After determining that Huffaker would not be testifying as an expert, the trial court allowed him to testify.

Huffaker testified to the following: He is employed by Mobil as a field engineer. He is responsible for supervising the drawings and specifications for Mobil facilities in the Chicago area. Mobil's standard mini-mart is 24 feet wide, 38 feet long and the "transaction area" is 552 square feet. The transaction area is comprised of the

cashier who collects money for the sale of gasoline and snack items, the shelving for snack items, a freezer, a Coke machine, two rest rooms and a storage room. He constructed the Mobil facility at the subject property. On the subject property, a standard mini-mart building was erected, which was 24 feet wide and 38 feet long. However, the transactional area or sales area was constructed with temporary walls, which reduced the 552 square feet to 400 square feet in order to comply with the City's restrictions. If Mobil succeeded in this litigation, Mobil would expand the sales floor but the amount of changes would be minimal since there would not be any plumbing, electrical or structural changes. The car wash entrance would be about 160 feet long, 18 feet wide and 12 feet 1 inch high.

Then, Vitas Maciukevicius testified as an expert in traffic studies. He stated the following: He is a transportation planning consultant employed by Metro Transportation Group. He performs and oversees impact studies. He supervised a traffic study for the subject property. He was of the opinion that the development of the gas, mini-mart and the car washing facility would not have any adverse impact to Euclid Avenue or the intersection of Euclid Avenue and Hicks Road. His opinion was based upon a review of traffic impacts such as through traffic flow, access to the site, and on-site circulation parking. The gas station relies on through traffic activity and would not generate more traffic. Any additional traffic created by the gas station, snack or car wash facility would be negligible. If Mobil added a car wash to the facility, the effect on through traffic would not change because the mini-mart building and the car wash are really accessory uses to the main function of the facility, which is refueling vehicles. As an accessory use, it does not add traffic to the flow. He estimated that approximately 50 to 70 vehicles would enter and exit the site during a peak hour and that 10% of those patrons would enter the site to just use the car wash.

Roy Krueger also testified as an expert for Mobil. He testified to the following: He is a real estate appraiser. A veterinarian clinic and a dog training center are located immediately contiguous to the south of the subject property. A one-story commercial office building is immediately to the west of the subject property. A three-bay Standard Oil station with one bay converted into a car wash is on the northwest corner of the Euclid Avenue and Hicks Road intersection. A two-story office building adjoins the Standard Oil station. Additionally, another office complex is to the north of the Standard Oil station. Krueger was of the opinion that the addition of a single car wash and the expansion of the mini-mart by 152 square feet would

not affect the surrounding property values because the Euclid and Hicks intersection is a totally commercial intersection and it has been a commercial intersection for 25 years or longer. There is a high traffic count on both Euclid Avenue and Hicks Road. The surrounding homeowners would not be adversely affected because of the commercial nature of the area, which has existed for the past 15 or 20 years, and because there are two fences surrounding Mobil and the homes. He was of the opinion that the highest and best use of the subject property, *i.e.*, what was most profitable to Mobil, includes the proposed car wash and expanded mini-mart. He was also of the opinion that an oil company is competitively disadvantaged if its service station does not have a car wash because many of the major oil companies have car washes.

Additionally, Marvin Salzenstein testified to the following: He is employed by Polytechnic Incorporated. He is a consulting engineer and measures noise. He was retained by Mobil to conduct a noise study to evaluate the noise potential of a car wash if it were located on the subject property. He was of the opinion that the proposed car wash would meet the City's noise code, that the car wash would meet the State of Illinois' requirements with respect to noise and that the residential areas' background noise would be above the predicted noise levels from the car wash.

Yvonne Erickson also testified. She testified to the following: She is an area sales manager for Mobil in the resale marketing division. As area sales manager, she is responsible for designing a gasoline sales plan for each gas station and she is also responsible for preparing a net profit plan for the stations in her designated area. During her direct examination by Mobil's attorney, the following colloquy occurred:

"Q. Based on your personal observation and experience, can you tell us, if you know, what you would have expected from this station had it had a car wash? ***

[THE CITY'S ATTORNEY]: Objection. Speculation. ***

[THE COURT]: I'll overrule it. She may answer.

A. I would have expected at least a 20 percent increase at this location.

Q. Why is that?

[THE CITY'S ATTORNEY]: Same objection, your Honor. There's no foundation. This witness is now testifying as an expert rendering an opinion.

[THE COURT]: I think that if, in fact, she had stated that all other stations that have car washes increase gas volume

somewhere around 20 percent, that \*\*\* meaning Mobil, that doesn't require her testimony to come under Rule 220. If she's expressing her opinion that based on other factors that are not the business experience of Mobil, that gas stations increase volume by 20 percent when they put in car washes, I think that is a 220 expert. \*\*\* She may answer."

Further, Joseph Abel, a city and regional planner, testified as an expert on behalf of Mobil. He stated the following: He reviewed Mobil's plans for the subject property. He examined the City's zoning ordinance and the City's zoning map. He went through all of the minutes of the various hearings held by the planning commission and the city council. He read all of the literature from Mobil and the material from the car wash manufacturer. He concluded that the car wash was definitely an accessory use based on the City's zoning ordinance definition of accessory use. He also concluded that the highest and best use of the subject property was for the existing use and the proposed addition of a car wash and the expanded mini-mart. He defined "highest and best use" as a use which utilizes the property and takes into consideration the size, shape and topography in terms of how it blends into the surrounding street system.

After Mobil rested, the City called Rolf C. Campbell as an expert in land planning and zoning. He testified to the following: He is a city planning and zoning consultant. He examined the subject property, the plans that were submitted to the City and the City's records. It was his opinion that the City acted reasonably when it did not grant the 552 square feet for the mini-mart because that size would dominate the use. The actual square footage of that structure becomes greater than the principal use, which is the service station. It is an approximately 900-square-foot building of which 552 square feet would be occupied by the mini-mart. He was also of the opinion that the City acted reasonably when it did not grant the special use permit for the car wash because the ordinance requires that there be only one principal use and one principal building on a lot. The car wash would be a totally separate facility on some 650 square feet, and in his opinion, is not accessory to the principal use. In his judgment, the City zoning ordinance does not allow two principal uses on the same lot. He thought that the car wash would adversely impact the residential area because the site's "intensity" would increase greatly.

On cross-examination, Campbell was unresponsively answering questions when the trial court stated, "I want you to direct your answers clearly to the questions asked. If your attorney wants to exam-

ine you on redirect, he will. I don't think I have to tell Mr. Campbell this. He probably has more experience in the courtroom than I." Campbell admitted that his opinion, that the proposed uses were "too intense" for the size of the site, was formed in June 1989 when he incorrectly calculated the lot's square footage. He had estimated that the lot was 22,000 square feet rather 26,000 square feet. He also stated that the principal use of the Standard Oil station across the street from the subject property is the pumping of gas, that the Standard Oil station has a car wash and it is an accessory use, that the Standard Oil station repairs cars and that the Standard Oil property is used for lots of different purposes. Campbell stated that the Mobil car wash would not be an accessory use because half of the cars coming onto the lot would be for the car wash. However, he conceded that the City does not require that an accessory use be in the same structure as the principal use.

Then, Joseph E. Zgonina testified as an expert on behalf of the City. He testified to the following: He practices in civil and traffic engineering. He reviewed the Metra Transportation Group traffic appraisal report, the site plan, the existing traffic volumes and traffic flow maps. He made various site inspections. He was of the opinion that the subject property could not operate efficiently and conveniently with a car wash and a 552-square-foot mini-mart.

On December 1, 1989, the court issued a lengthy and thoughtful opinion and entered judgment thereon. Initially, the trial court stated its standard of review:

"Zoning ordinances enjoy a presumption of validity and the burden of proof is upon Plaintiff to overcome such presumption by clear and convincing evidence. *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46.

The review of a denial of a special use permit is tested by whether the denial bears a real and substantial relation to the public health, safety, morals or general welfare. *Reedy v. City of Wheaton* (1981), 102 Ill. App. 3d 1082, 1086.

[T]he standard of review *** is the same in the case where a plaintiff challenges the denial of a special use permit or where the plaintiff challenges the underlying zoning. (*La Salle National Bank v. County of Lake* (1975), 27 Ill. App. 3d 10, 15.) 'If a court determines that the denial of a special use permit, including the conditions and restrictions suggested by the zoning procedures and record as a part of such permit, does not bear a real or substantial relation to the public health, safety, morals or general welfare, judicial relief must be

granted.' *Id.* quoting *Duggan v. County of Cook* (1975), 60 Ill. 2d 107, 116.

The factors to be considered in determining the validity of a zoning ordinance are: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of Plaintiff promote the health, safety, morals or general welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; (6) the length of time the property is vacant as zoned, considered in the context of land development in the area in the vicinity of the subject property. *No one factor is controlling.* (emphasis in the original) *La Salle National Bank,* 12 Ill. 2d at 47. *Sinclair Pipe Line Company v. Village of Richton Park* (1960), 19 Ill. 2d 370."

Then, the trial court determined that Mobil's proposed uses were "reasonable" and determined that the car wash was an accessory use because:

"[i]t is subordinate to and serves the service station; it is subordinate in area (648 square feet versus 912 square feet); it is subordinate in extent and purpose (less people will get cars washed than buy gas); it contributes to the necessity of the principal use; it is located on the same lot and occupies less than five (5) per cent of the lot on which the main building is situated and otherwise complies with size requirements."

Finally, the trial court declared that the City's ordinance granting in part and denying in part Mobil's requested special use was "null and void" to the extent it prevented Mobil from building a mini-mart with 552 square feet of floor area and a separate building for a car wash. Additionally, the court ordered the City to grant Mobil a special use permit for its proposed uses. The City appeals.

■ The City argues that the trial court's determination that the City's ordinance was void is against the manifest weight of the evidence because the trial court did not weigh the ordinance's impact on Mobil against the benefit to the public. We disagree. The trial court correctly stated that Mobil had the burden of proving by clear and convincing evidence that the zoning ordinance, as applied to its property, is arbitrary and unreasonable, and without substantial relation to the public health, safety, comfort, morals or general welfare. (*Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 53, 426

N.E.2d 1276.) Mobil had to prove "that the zoning ordinance is unreasonable insofar as it *excludes*" its specific special use. (Emphasis in original.) (100 Ill. App. 3d at 53, 426 N.E.2d 1276.) In other words, Mobil had to prove by clear and convincing evidence that the use proposed was reasonable. (100 Ill. App. 3d at 53, 426 N.E.2d 1276.) In determining whether Mobil's proposed use was reasonable, the trial court correctly enumerated and applied the *La Salle* factors, noting that no one factor is controlling. (See *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65; *Norwood Builders v. City of Des Plaines* (1984), 128 Ill. App. 3d 908, 917-18, 471 N.E.2d 634.) This court adopts the applicable law as stated above by the trial court.

■ Additionally, the City argues that the trial court's determination that Mobil's proposed uses were reasonable is against the manifest weight of the evidence. We disagree. A decision is against the manifest weight of the evidence only if an opposite conclusion is clearly apparent. (*Parkway Bank & Trust Co. v. City of Chicago* (1982), 107 Ill. App. 3d 252, 437 N.E.2d 753.) In the case at bar, an opposite conclusion is not clearly apparent.

While the City's experts' opinions differed in some respects from Mobil's experts' opinions, the trial court, acting as the trier of fact, was allowed to accept one expert's opinion over another or reject all expert testimony. This court will not second-guess the trial court because it was in a superior position to evaluate the witnesses' credibility and determine the weight of their testimony. (*Norwood Builders*, 128 Ill. App. 3d at 918.) We find that the trial court's determination is amply supported by the record in its entirety. It is uncontested that the subject property is presently zoned M1 (manufacturing), which allows, among other uses: animal hospitals, automobile painting, bottling plants, parking garages, manufacturing from paper, propane gas storage, motor vehicle repair and automobile laundry (car wash). Additionally, it is not contested that an animal hospital, an office building and a Standard Oil station with a car wash are in close proximity to the subject property.

Further, the following evidence supports the trial court's determination: Huffaker's testimony that only the square footage of the mini-mart sales area would be increased, not the dimensions of the mini-mart building; Maciukevicius' opinion that the development of the gas, snack and car wash facility would not have any adverse impact on Euclid Avenue or on the intersection of Euclid Avenue and Hicks Road; Krueger's opinion that the surrounding homes' values would not be affected by Mobil's proposed uses because the area has

been commercially used for the past 15 or 20 years and that the highest and best use of the subject property included the proposed car wash and the expanded mini-mart; and Salzenstein's opinion that the proposed car wash would meet the City's noise code, that the car wash would meet the State of Illinois' requirements with respect to noise and that the background noise that exists in the residential areas would be above the noise levels that would be predicted to come from the car wash.

Based upon the foregoing, the trial court's determination that the public welfare does not require either the restriction or the resulting loss to Mobil is not against the manifest weight of the evidence.

■■ ■ The City also argues that the trial court erred in allowing Huffaker to testify, contending that he was an expert and that his name was not disclosed as required by Rule 220 of the supreme court rules (134 Ill. 2d R. 220(b)). We disagree. Huffaker was not testifying as an expert. An expert is defined as "a person who, because of education, training or experience possesses knowledge of a specialized nature beyond that of the average person on a factual matter ***. He may be an employee of a party, a party, or an independent contractor." (134 Ill. 2d R. 220(a)(1).) The trial court properly determined that Huffaker would not be testifying as an expert because his testimony related to knowledge he personally learned as a consequence of supervising the mini-mart construction. Personal knowledge with respect to a matter is not sufficient to render an individual an "expert." Therefore, Mobil did not have to comply with Rule 220 of the supreme court rules.

■■ ■ Alternatively, the City argues that the trial court abused its discretion by allowing Huffaker to testify, contending that Mobil did not comply with Rule 219 of the supreme court rules. (134 Ill. 2d R. 219.) We disagree. Rule 219(c)(iv) permits the exclusion of a witness for unreasonable failure to comply with discovery requests. (134 Ill. 2d R. 219(c)(iv).) The factors to be considered in determining whether exclusion is proper are: "the surprise to the adverse party, the prejudicial effect of the testimony, the timely objection to the testimony and the good faith of the party calling the witness." (*Kirkwood v. Checker Taxi Co.* (1973), 12 Ill. App. 3d 129, 132, 298 N.E.2d 233.) The trial court acted within the scope of its discretion when it allowed Huffaker to testify. Mobil informed the City of its intention to call Huffaker as soon as it recognized that it needed his testimony. Further, the record does not reflect any attempts by the

City to continue the trial so that it could conduct "sufficient" discovery.

Finally, the City argues without merit that the trial court erroneously allowed Erickson to testify, contending that she qualified as an expert and Mobil did not comply with Rule 220 of the supreme court rules (134 Ill. 2d R. 220). As authority for its argument, the City cites *Oakleaf v. Oakleaf & Associates, Inc.* (1988), 173 Ill. App. 3d 637, 527 N.E.2d 926, *appeal dismissed* (1988), 123 Ill. 2d 560, 535 N.E.2d 403. However, the *Oakleaf* court did not decide the merits of a Rule 220 argument because the issue was not preserved for review. (*Oakleaf*, 173 Ill. App. 3d at 651.) Additionally, as authority for its argument, the City cites *Singh v. Air Illinois, Inc.* (1988), 165 Ill. App. 3d 923, 520 N.E.2d 852. In *Singh*, however, the parties were not disputing whether a witness was an "expert"; rather, the appellant contended that the appellee violated Rule 220 because the witness was not disclosed within the 60-day requirement. *Singh*, 165 Ill. App. 3d at 929.

█ We find that the trial court properly determined that Erickson was not an expert and that, therefore, Mobil did not have to comply with disclosure under Rule 220. She merely testified to matters she personally knew as a consequence of her employment with Mobil.

Alternatively, the City argues that the trial court erred in allowing Erickson to testify, contending that Mobil did not comply with Rule 219 of the supreme court rules. (134 Ill. 2d R. 219.) The trial court acted within the scope of its discretion when it allowed Erickson to testify. It is clear that the City had notice of Mobil's intention to call Erickson at a pretrial conference. Moreover, there is no evidence of the City's attempt to depose Erickson or to delay the trial to conduct "sufficient" discovery.

For the reasons set forth above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.