GEORGE D. WUNDSAM, Building Administrator For The City of Park Ridge, Plaintiff-Appellee, *v.* DONALD GILNA, Defendant-Appellant.

First District (2nd Division)    No. 80-725

Opinion filed June 16, 1981.—Rehearing denied July 21, 1981.

Jegen & Carlson, of Glen Ellyn (William E. Jegen, of counsel), for appellant.

Paul N. Keller, of Park Ridge, for appellee.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant, Donald Gilna, appeals from a judgment entered against him by the trial court, sitting without a jury, in a zoning ordinance violation action in which he was fined $200. The underlying basis of the quasicriminal complaint filed by plaintiff, George D. Wundsam, building and zoning administrator for and on behalf of the city of Park Ridge (for clarity in identification, hereinafter referred to as city), was that defendant had illegally stored his motorized home in the front yard driveway leading from the street to the garage attached to his single-family home contrary to the city zoning ordinance. Defendant raised issues claiming the unconstitutionality of the ordinance and that his prior lawful use of the property for storage of the motorized home gave him the right to continue that practice as a lawful nonconforming use of the property. For the reasons which will presently appear, we affirm.

The city of Park Ridge ordinance adopted on September 2, 1975, in those parts relevant to this case, are as follows:

"9.04 RECREATIONAL VEHICLES

A. *Definitions*. Vehicles or other similar facilities used primarily for recreational purposes. Such vehicles include travel trailers, pickup coaches, camper trailers, motorized homes, boats and rafts. For the purpose of administering Section 9.04 Recreational Vehicles the following definitions shall be applicable:

❋ ❋ ❋

*Motorized Home*: A Motorized Home is a portable dwelling

designed and constructed as an integral part of a self-propelled vehicle.

\* \* \*

B. *Parking Requirements.* The parking and storage of travel trailers, pickup coaches, camper trailers, motorized homes, boats and rafts in the R—1A through R—5 Districts shall be subject to the following regulations, except that recreational vehicles that cannot meet the parking requirements of this ordinance may be parked in the front or corner side yard for a period not to exceed two (2) years from the date of the adoption of this ordinance.

1. Recreational vehicles shall not be stored within the front and corner side yard, except that recreational vehicles may be temporarily parked for trip preparation and unloading purposes."

Defendant's property is located on the east side of South Knight Avenue in the city of Park Ridge within an R—1 One Family Residence district. The property is improved with a two-story brick residence with attached garage, built on a lot 50 feet wide by 132 feet in depth. That depth includes an alley vacated by the city. The area within which defendant's home is located is improved exclusively with single-family residences, including the property uses to the north and south of his home. The north side yard of his property is approximately five feet four inches in width, and the south side yard is approximately seven feet in width. The residence is constructed approximately 31 feet east of the front lot line, the intervening space being considered defendant's front yard. The attached garage and driveway are located at the north side of the home.

Among the witnesses who testified in support of the ordinance violation action were Patricia Ross, a neighbor who lives in a house directly north of defendant's property; George Wundsam, building and zoning administrator; Thomas J. Buckley, a city planner; James Nelson, a real estate appraiser and broker; William Hominick, a Park Ridge police officer; Donald Pfister, director of fire protection employed by the Park Ridge fire department; and Maxine Cook, a neighbor of defendant who lives directly across the street. The cumulative evidence presented by these witnesses generally was that when defendant's recreational vehicle was parked in his driveway, it obstructed the view of the front yards on which adjacent homes were situated; the vehicle was considered under an administrative interpretation to be a self-propelled portable dwelling unit by reason of its size and weight, although precise specifications are not contained within the ordinance itself; and the front yards of the residences and location of defendant's home have a minimum depth of 30 to 35 feet and are open, unobstructed areas improved with trees and landscaping.

The city's witnesses also testified that the absence of an ordinance such as section 9.04 would encourage the parking of large recreational vehicles in front yard areas, which would have an adverse impact upon the character, appearance and function of the neighborhood; the absence of such an ordinance would diminish the market value of single-family residences in the area due to greater lot density use and view obstruction both from the street and adjoining homes; the storage of recreational vehicles of this size presents some problems for crime control in that neighbors would have greater difficulty observing adjacent residences and the presence of such vehicles may themselves draw criminal activity; and fire protection problems would develop in that accessibility to homes would be decreased, and combustible materials stored inside recreational vehicles would present additional hazards. There was further testimony that defendant's vehicle was situated in his front yard driveway in 1978: from September 8 to 11; September 29 and 30; from October 4 to October 9; and from November 10 to November 27.

In support of the defense, among the witnesses called were Norman Brown, former fire chief of Park Ridge from 1960 to 1976; Herman Spahr, city manager of Park Ridge, testifying under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 60); Albert D. Pantino, a real estate appraiser; Billy Kervin, executive director of the Chicagoland Recreational Vehicle Dealers Association; and defendant himself. The gist of their testimony was that no fire in a recreational vehicle parked in a driveway could be recalled; although a recreational vehicle did not appear to create a greater fire hazard than an automobile parked in a driveway, due to its greater size, the fire communicability of such a vehicle increased the chance of fire spreading; no specific safety study was ever published prior to the enactment of section 9.04; in a newsletter published in 1975 by the city of Park Ridge, the ordinance was mentioned as a means of maintaining aesthetics in the neighborhood; the presence of recreational vehicles would have no adverse effect on property values; and defendant's vehicle was a class A motor home which is a complete unit with built-in sink, stove and refrigerator.

Defendant testified that he purchased the Landau motor home in 1973, equipped with a bathroom, refrigerator and stove. It is 25 feet long, 7 feet wide and 10 feet high. Prior to trial it was parked on his front driveway, but he now parks it four miles away, on business property. He had widened his existing driveway to accommodate the vehicle after he had been told by Wundsam, prior to its purchase, that there was no zoning law which prevented him from parking his vehicle on the driveway. He applied to the Zoning Board of Appeals for a variance on October 27, 1977, and was allowed a temporary permit to park until July 1, 1978.

At the trial, the city maintained that section 9.04 was a constitutional and reasonable exercise of the city's police power and that defendant's activities were in violation of its terms. The defense argued that the ordinance was unconstitutional because it bore no direct relation to the public welfare and it unfairly precluded defendant from keeping his recreational vehicle anywhere on his property because he had no means of parking it in the rear or side yards for lack of space; the ordinance is vague and overreaching; and the continued parking of the vehicle was a legal, nonconforming use. The trial court found that the zoning ordinance was constitutional because: it was not arbitrary, unreasonable or capricious as it related to the motorized home owned by defendant; the ordinance would facilitate the establishment of a neighborhood of homes so as to avoid congestion in the streets; it would secure safety from fire and other dangers, prevent overcrowding of land, obtain adequate light, air and sunshine; and it would tend to improve and beautify the city and harmonize with the natural characteristics of the locality, relying upon *Village of Glenview v. Van Dyke* (1968), 98 Ill. App. 2d 118, 240 N.E.2d 354; and defendant's use of the property was not legally nonconforming. The court thereafter found defendant guilty of violating the provisions of section 9.04B1 of the city of Park Ridge and imposed a fine in the sum of $200.

The constitutional challenge to the zoning ordinance here involved must be measured against the well-established rules which govern such contentions. A presumption of validity prevails in favor of existing zoning ordinances and one who attacks its provisions must prove by clear and convincing evidence that the ordinance is, as applied to their property, arbitrary, unreasonable and without a substantial relationship to the public health, safety, morals or welfare. (*LaSalle National Bank & Trust Co. v. County of Cook* (1981), 94 Ill. App. 3d 341, 418 N.E.2d 932; *Littlestone Co. v. County of Cook* (1974), 19 Ill. App. 3d 222, 311 N.E.2d 268, *cert. denied* (1975), 420 U.S. 929, 43 L. Ed. 2d 401, 93 S. Ct. 1130; *Village of Glenview v. Van Dyke* (1968), 98 Ill. App. 2d 118, 121.) This rule emanates from the recognition that zoning is primarily a legislative function; a court's intercession is limited to an inquiry of whether that legislative power, as exercised, unduly invades private constitutional rights without reasonable justification in the public welfare. (*Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 179-81, 354 N.E.2d 899.) The validity of an existing zoning ordinance must be measured against the factors enumerated in the seminal case of *LaSalle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65. Where it appears that room exists for a difference of opinion concerning the reasonableness of a zoning classification, the legislative judgment is conclusive. (*LaSalle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, 428, 312 N.E.2d 625; *Grobman v. City of Des Plaines* (1975), 59 Ill. 2d

588, 593, 322 N.E.2d 443.) A court is without authority to substitute its judgment for that of a legislative body; it is merely to determine whether the legislative decision which resulted in the restriction unreasonably impinges upon constitutional rights. *La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 310, 388 N.E.2d 388; *LaSalle National Bank & Trust Co. v. County of Cook* (1981), 94 Ill. App. 3d 341, 352.

With these principles as frames of reference, we turn to defendant's contentions on appeal. He claims first that the prohibition against parking in front yards of all portable dwellings designed and constructed as integral parts of self-propelled motor vehicles, regardless of their size, is not reasonably necessary to promote the public health, safety, morals and welfare. Such a regulation is overbroad, he asserts, since the parking of family vehicles in that same yard is a usual, ordinary and permitted use, as well as other vehicles up to 8,000 pounds in weight, obviously including vans and pickup trucks which are of no greater length, width or height, mass or bulk. He urges that the only distinguishing feature between permitted and prohibited vehicles is whether they have facilities which render a prohibited vehicle a portable dwelling. Citing testimony of witnesses that the contents of such a vehicle would not be determinative insofar as proscription of parking was concerned, but that the size and bulk are the critical standards, defendant concludes the ordinance has missed its intended target because it is not couched in terms of size or bulk.

■■ Defendant makes no claim that his motor home, bearing dimensions of 25 feet in length, 7 feet in width and 10 feet in height, does not fit the objectionable size and bulk which he himself suggests would be a proper standard for prohibition, but nevertheless insists upon the right to complain of constitutional overbreadth based upon his reading of *Grayned v. City of Rockford* (1972), 408 U.S. 104, 33 L. Ed. 2d 222, 92 S. Ct. 2294. *Grayned*, however, involved the fundamental first amendment rights, which invoked a high level of scrutiny and due process analysis. (See, *e.g., Sutherland v. DeWulf* (S.D. Ill. 1971), 323 F. Supp. 740, 746-47; Note, *The First Amendment Overbreadth Doctrine*, 83 Harv. L. Rev. 844, 845 (1970); Tribe, American Constitutional Law §§12—24 through 12—26 (1978).) "Condemned," as we are, "to the use of words, we can never expect mathematical certainty from our language," and we are required to " 'extrapolate * * * [the] allowable meaning * * * [of] the words of the ordinance itself, * * *' " (*Grayned v. City of Rockford*, 408 U.S. 104, 110, 33 L. Ed. 2d 222, 228-29, 92 S. Ct. 2294, 2300). Section 9.04 sets forth, as the objects of its application, "such vehicles as travel trailers, pickup coaches, camper trailers, motorized homes, boats and rafts." It is apparent from the list that size, bulk and function of the objects were clearly within the intended regulation. Defendant fails to demonstrate with clear

and convincing evidence how the size of his vehicle fails to fall within these legitimate concerns of the zoning ordinance.

The Park Ridge zoning ordinance permits recreational vehicles to be parked and stored in side or rear yards, and from this fact defendant infers that fire safety, police protection and property value considerations as they relate to sanctions imposed against parking such vehicles in front yard driveways bear no relationships to the public health, safety or welfare. We disagree. Among the earliest authorities sustaining zoning regulations related to setback and front yard restrictions upon the use of real property in residential districts was *Gorieb v. Fox* (1927), 274 U.S. 603, 71 L. Ed. 1228, 47 S. Ct. 675. Recognizing the validity of such a provision in terms of the public health, safety and welfare, the Supreme Court observed (274 U.S. 603, 609, 71 L. Ed. 1228, 1231, 47 S. Ct. 675, 677):

> "The members of the city council, as a basis for the ordinance, set forth in their answer that front yards afford room for lawns and trees, keep the dwellings farther from the dust, noise and fumes of the street, add to the attractiveness and comfort of a residential district, create a better home environment, and, by securing a greater distance between houses on opposite sides of the street, reduce the fire hazard; that the projection of a building beyond the front line of the adjacent dwellings cuts off light and air from them, and, by interfering with the view of street corners, constitutes a danger in the operation of automobiles. We cannot deny the existence of these grounds; indeed, they seem obvious."

Our supreme court has held to the same effect in *Stemwedel v. Village of Kenilworth* (1958), 14 Ill. 2d 470, 475, 153 N.E.2d 79:

> "It cannot be denied that the observance of a reasonable setback minimum tends to prevent the overcrowding of land, to promote safety from fire and other dangers, and to secure adequate light, air and sunshine. (See *Reitman v. Village of River Forest*, 9 Ill. 2d 448.)"

■■ Recently, in *City of Carbondale v. Van Natta* (1975), 61 Ill. 2d 483, 487, 338 N.E.2d 19, the supreme court reviewed the grants of power extended to municipalities from the earliest zoning provisions to the present and found that not only were municipalities authorized to establish building and setback lines within their own boundaries, but that the powers enumerated could be exercised within territory contiguous to the municipalities to the extent of 1½ miles beyond as a related power which (61 Ill. 2d 483, 489):

> "[I]nsures a recognition that the authority to regulate should be 'normally exercised as part of the zoning power, and essentially all zoning ordinances contain provisions requiring that buildings be set back a certain distance from the public way.' (2 R. Anderson,

American Law of Zoning sec. 8.43, at 34 (1968); see also 2 Yokley, Zoning Law and Practice sec. 17—3 (3d ed. 1965); see generally *City of Palos Heights v. Pakel*, 121 Ill. App. 2d 63; *Karasik v. City of Highland Park*, 130 Ill. App. 2d 566.) Municipalities may be frustrated in attempting to enforce other provisions of their zoning ordinances if they are not allowed to establish setback lines. See *Stemwedel v. Village of Kenilworth*, 14 Ill. 2d 470, 475."

From the foregoing authorities it is clear that the Park Ridge Zoning Ordinance was within constitutional constraints in regulating the use of front yards for the storage of the motorized home in the instant case.

■■ The exhibits and testimony of the city's witnesses relative to the mass and bulk of defendant's vehicle, although controverted in some respects by defendant's witnesses, nevertheless sufficiently show a legitimate connection between the objectives of the ordinance and its relationship to the prevention of overcrowding of land; the maintenance of adequate light, air and sunshine; the promotion of safety from fire and other dangers and the improvement and beautification of the city which harmonizes with the natural characteristics of the neighborhood, as found by the trial court in this instance, and are well supported by law. (*Gorieb v. Fox*; *Stemwedel v. Village of Kenilworth*; *Village of Glenview v. Van Dyke*; *Johnson v. Village of Morton* (1976), 40 Ill. App. 3d 566, 352 N.E.2d 456.) Significantly, both *Van Dyke* and *Johnson* upheld similar ordinances against constitutional attacks by recreational vehicle owners as to yard parking and storage. Accordingly, the trial court's finding of constitutionality with respect to sections 9.04A and 9.04B1 as applied to the motor home is not against the manifest weight of the evidence and must be affirmed. *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 516-17, 377 N.E.2d 21; *LaSalle National Bank & Trust Co. v. County of Cook* (1981), 94 Ill. App. 3d 341, 349.

■■ The next assertion of unconstitutionality made by defendant is that section 9.04A, the definition section, is vague because the definition of "motorized home" includes both large and small vehicles with life-support systems, although the city is concerned only with larger vehicles. He cites Wundsam's testimony that the latter would utilize 8,000 pounds as the borderline between large and small vehicles and enforce the ordinance only against those over that weight. As previously noted, however, defendant's motor home is of such size and bulk as to have been properly deemed by the trial court to come within the proscriptions of the ordinance. Defendant cannot complain of statutory vagueness as applied to hypothetical facts where, as here, the ordinance is not vague as applied to him. (See *Parker v. Levy* (1974), 417 U.S. 733, 41 L. Ed. 2d 439, 94 S. Ct. 2547.) Defendant cites and relies upon *Clark Oil & Refining Corp. v. City of Evanston* (1961), 23 Ill. 2d 48, 177 N.E.2d 191, with respect to standing.

*Clark* is of no aid to him in this regard. In *Clark*, the holder of an option to purchase property was found to lack standing to challenge the validity of a zoning ordinance as applied to the subject property there; no issue as to the applicability of the ordinance to other property owners was raised in that case such as defendant claims here.

■■ Also classified by defendant as unconstitutionally vague are the terms contained in section 9.04B1, "stored", and "temporarily parked" because they are not explicitly defined by the ordinance. In the absence of statutory and ordinance definitions indicating a different legislative intention, courts will assume that words have their ordinary and popularly understood meaning. (*Winks v. Board of Education* (1979), 78 Ill. 2d 128, 136-37, 398 N.E.2d 823.) The term "stored," as used in the ordinance, obviously refers to an extended or long-term presence as compared with the term "temporarily parked," which manifestly contemplates a transient presence. We find no error with regard to the trial court's application of the terms "stored" and "temporarily parked" here in the face of evidence that the motorized home was left standing in defendant's front yard driveway after the expiration of his variation permit, from September 8 to 11; October 4 to 9; and November 10 to 27; in the year 1978, which led to this ordinance violation action.

Further attacking the ordinance for unconstitutional vagueness, defendant sets forth examples of how ordinance terms can be interpreted differently than did the trial court. An ordinance is not subject to attack for unconstitutional vagueness because the imagination can conjure up hypothetical circumstances in which the meaning of some terms may be in question. (*Schiller Park Colonial Inn, Inc. v. Berz* (1976), 63 Ill. 2d 499, 510-14, 349 N.E.2d 61.) Interestingly, defendant's application for a variation from the terms of section 9.04 before the Park Ridge Zoning Board of Appeals, while not constituting a waiver as the city seems to argue, nevertheless suggests a conclusion contrary to his claim of vagueness since it is apparent that he knew the ordinance prohibited the parking of vehicles the size and bulk of his motorized home upon his front yard driveway for more than the few days necessary for loading and unloading purposes. We find no error in the trial court's determination of ordinance validity in this regard.

■■ Putative selective enforcement by the city against only large vehicles leads to defendant's next contention with respect to the allegedly unconstitutionality of the ordinance under the strictures of equal protection of the law. This argument is based upon Wundsam's statements as to how he would enforce the regulations. The testimony upon which defendant relies, however, was hypothetical and speculative. No instance of actual selective enforcement was cited to the trial court. Notwithstanding this fact, a rational basis for such enforcement of the ordinance against larger

vehicles realistically emerges under the evidence submitted here. The equal protection clause is concerned with acts of invidious discrimination, not to mere acts of unequal enforcement, or the erroneous and even arbitrary administration of the regulatory power. (See, *e.g., Contemporary Music Group, Inc. v. Chicago Park District* (1978), 57 Ill. App. 3d 182, 188, 372 N.E.2d 982.) This claim of unconstitutionality must also fall therefore.

■■ Another issue raised relates to an asserted constitutionally protected right to continue defendant's nonconforming practice of storing his vehicle on his front yard driveway irrespective of ordinance sanctions. This argument is based upon the fact that defendant parked the motor home in his driveway for several years before the ordinance was passed and before its effective date. Since parking his motorized home in the front yard driveway was legal before the ordinance was passed and before it became effective, he claims that it became a legal nonconforming use thereafter under section 5.01A of the City of Park Ridge Zoning Ordinance, which countenances the continuance of legal nonconforming uses within the city. Citing *Borough of Northvale v. Blundo* (1963), 81 N.J. Super. 201, 195 A.2d 221, the city maintains that in the present case, as in *Blundo*, the mere incidental parking of a vehicle on land used for a residence does not authorize that activity simply because it takes place on residential premises, but the claimed activity must bear a relationship to the primary land use. A fine imposed for parking a commercially used station wagon outside a garage on residential property contrary to the terms of the zoning ordinance was upheld in *Blundo*. (See also *Stokes v. Zoning Board of Adjustment* (1961), 402 Pa. 508, 167 A.2d 316; Yokley, Zoning Law and Practice §16—7, at 238-39 (3d ed. 1965).) Defendant's reliance upon *People v. Smith* (1976), 38 Ill. App. 3d 798, 349 N.E.2d 91, is of little assistance under the instant facts since, in *Smith*, the court was unable to determine, in the absence of the presentation of the ordinance itself, whether or not the keeping of horses on the subject property was a nonconforming use thereunder, in an appeal in which the appellee did not participate. So, too, in *County of Cook v. Hoytt* (1965), 59 Ill. App. 2d 368, 208 N.E.2d 410, the court found the alleged nonconforming use, a house trailer, to have been both a permitted residential use, and therefore a primary use of property, as well as a use incidental to the operation of a dog kennel on the property. The storage of a motorized home on residentially zoned property is neither incidental nor primary in relation to the residence constructed on that property. Defendant's reference to *parking* of a motorized home as a recognized "accessory use" under section 4.04E7 of the Park Ridge Zoning Ordinance has little bearing upon the proscribed *storage* of such a vehicle on the subject property. Since we find that storing the motorized home on defendant's property was not a

lawful nonconforming use, we need not consider whether the city improperly limited its continuation over a period of time.

From the foregoing discussion it is evident that the trial court correctly ruled upon the constitutionality of the Park Ridge Zoning Ordinance as applied to defendant's motorized home, and upon defendant's violation thereof. Whether, as defendant suggests, the limitations imposed upon storage of motorized homes in residential districts in the city of Park Ridge run contrary to an emerging American way of life, or not, is a legislative question to be addressed to the corporate authorities. At best, defendant's arguments reflect only that such restrictions may be fairly debatable, in which case the courts may not substitute their judgments for the legislative decision or otherwise intercede. (*La Grange State Bank v. County of Cook*; *Grobman v. City of Des Plaines*; *La Salle National Bank v. City of Evanston.*) The judgment must therefore be affirmed.

Affirmed.

STAMOS and DOWNING, JJ., concur.