BANK OF PAWNEE, Plaintiff-Appellee and Cross-Appellant, v. DENNIS L. JOSLIN, Defendant and Appellant and Cross-Appellee and Third–Party Plaintiff-Appellant (Roger Alexander, Defendant and Third-Party Plaintiff; Village of Pawnee et al., Third–Party Defendants-Appellees).

Fourth District   No. 4—87—0427

Opinion filed February 11, 1988.—Modified on denial of rehearing April 7, 1988.

928

Duane D. Young, of Long, Rabin & Young, Ltd., of Springfield, for appellant.

John M. Myers, of Pfeifer & Kelty, P.C., of Springfield, for appellee Village of Pawnee.

Grady E. Holley, of Holley, Keith & Huntley, of Springfield, for appellee Bank of Pawnee.

JUSTICE KNECHT delivered the opinion of the court:

Defendant–third-party plaintiff Dennis Joslin appeals the entry of summary judgment against him and in favor of the plaintiff, the Bank of Pawnee (bank), and the third-party defendant the Village of Pawnee (village). Joslin also disputes the denial of his respective motions for summary judgment against both parties. The bank cross-appeals the trial court's computation of interest on its judgment award against Joslin.

We affirm on the liability issues, but reverse as to the interest award.

This case began when the bank instituted suit against Joslin to recover the unpaid balance on a promissory note signed by him. Joslin responded by way of affirmative defense to the complaint, later counterclaiming against the bank and directing a third-party action against

the village. Joslin asserted he signed the note in question as an undisclosed agent acting on behalf of the village for the purchase of a building when the owner of that building indicated he would not sell to the village. Joslin contends all parties to this appeal knew of the arrangement, and he had been repeatedly assured there would be no personal liability on his part. The village, however, has never bought the building from him, and the bank obviously has looked to him for full payment under the terms of the note.

■■ We are here concerned with the grant of motions for summary judgment. Judgment may only be summarily entered when, after construing all the facts in the pleadings, affidavits, and depositions in a light most favorable to the nonmoving party, a court may conclude there are no genuine issues of material fact suitable for resolution by trial. (*Fuoss v. Auto Owners (Mutual) Insurance Co.* (1987), 118 Ill. 2d 430, 516 N.E.2d 268.) A review of the record is necessary, and for a full grasp of the issues raised, the pleadings in this case must be summarized.

On May 17, 1983, the bank filed its complaint against defendants Dennis L. Joslin and Roger Alexander (who is not a party to this appeal) seeking recovery under a past-due promissory note executed on July 1, 1982, in the principal sum of $19,904.98. Joslin answered on June 27, 1983, raising as affirmative defense that he signed both the note and a renewal as the "undisclosed agent" of the village, a fact he contends was known by the bank. Joslin further asserted by way of affirmative defense the bank never intended to look to him for payment of the note.

The bank on March 8, 1984, moved to dismiss Joslin's affirmative defense. That motion was granted by the court on March 19, 1984, with Joslin given leave to amend within 21 days. Joslin never filed an amended affirmative defense. Instead he filed a counterclaim in three counts against the bank on April 9, 1984. While the counterclaim restated some of Joslin's previous allegations concerning his actions in an undisclosed agency capacity, it was further alleged the village clerk, Carroll Waganer, in his second capacity as loan officer for the bank, represented the bank would furnish all money necessary for the building purchase, and it would not look to Joslin for repayment because he was acting for the village. The bank again responded with a motion to dismiss, also renewing its motion for summary judgment on the complaint.

On May 23, 1984, the trial court granted the bank's motion for summary judgment on its complaint against Joslin, but denied the bank's motion to dismiss the counterclaim. By docket entry that day,

the court specifically stayed execution of the judgment until further written order of the court. No final written judgment order was entered until December 23, 1986. As the case progressed, the bank on September 5, 1986, did move for summary judgment on the counterclaim.

Turning now to the pleadings as between Joslin and the bank, on June 27, 1983, a third-party action was initiated against the village, later amended in two counts filed October 11, 1983. Joslin in that amended third-party complaint alleged the village, during an official meeting of the board of trustees in May of 1982, decided to pursue the purchase of a building located immediately adjacent to the current village offices. It was further averred the board at that meeting expressly authorized the village manager, Roger Alexander, to extend an offer or otherwise negotiate for the acquisition of that building. When initial efforts were rebuked by the owner, both Alexander and Waganer, the village clerk, approached Joslin and reached an oral agreement that he act as undisclosed agent on behalf of the village for purposes of contracting to buy the building. Joslin in his third-party complaint further alleged on June 1, 1982, Alexander and Waganer represented to him the village would immediately take title to the building after closing and would pay the purchase price plus all other expenses. Waganer, who again was also a loan officer for the bank, reportedly informed Joslin the bank would furnish all money necessary for the purchase and would not consider him liable under the note.

On July 1, 1982, Joslin executed a personal promissory note evidencing the money advanced to pay for the building. On July 6, 1982, the sale was closed, and Joslin obtained title. However, Joslin alleged the village refused his subsequent demands to buy the building back from him or otherwise fulfill its promised obligations. Joslin in his pleading declared he had acted reasonably in the purchase of the building, relying on the village's assurances it would take title to the building and would reimburse him for all costs and expenses. The third-party complaint concluded Joslin fully performed his portion of the alleged agreement, seeking specific performance indemnification.

The village as third-party defendant on April 29, 1986, filed five affirmative defenses to the amended third-party complaint. Three are pertinent for our purposes. They state: (1) the alleged agency agreement by which Joslin was to purchase real estate on behalf of the village was not evidenced by a writing signed by the village as required under the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 2); (2) the alleged contract by which the village was to purchase the real estate back from Joslin similarly was not reduced to writing; and (3) Waganer

and Alexander, as village clerk and manager, respectively, lacked either actual or apparent authority to appoint Joslin as the village's agent, or to appoint someone to purchase real property, and Joslin knew or should have known this.

On August 11, 1986, the village moved for summary judgment, appending to its motion excerpts from certain discovery depositions, the minutes of a village board meeting held September 27, 1982, and copies of village ordinances establishing the duties of its municipal manager. All motions pending at that time, including the bank's motion for summary judgment on the counterclaim and the village's motion for summary judgment on the third-party complaint, were heard before the trial court on September 17, 1986. On that date, the court by docket entry: granted summary judgment in favor of the village and entered summary judgment in favor of the bank on counts I and II of the counterclaim (although that action was filed in three counts).

The bank on October 2, 1986, filed a "motion for partial vacation and/or to reconsider the judgment order of September 17, 1986," essentially requesting amendment of the order by deletion of the "cause stricken" language until such time as the judgment could be reduced to actual damages; otherwise, the bank argued, the order would lack appealability. The court by docket entry on October 16, 1986, so amended the September 17 order. Joslin on October 15, 1986, filed an express motion to reconsider "and for the court to expand the record to include findings of fact and to state conclusions of law," which was denied on November 12, 1986. A written judgment order entered December 23, 1986, set total judgment in the bank's favor, including principal and interest, at $33,992.40.

Joslin on January 20, 1987, filed a timely notice of appeal from this order. However, this court on April 7, 1987, dismissed the appeal as premature because one count of the counterclaim remained pending, "albeit through apparent inadvertence in the trial court."

When the case was returned to the circuit court of Sangamon County, the bank moved for summary judgment on the remaining count III of the counterclaim. At this point Joslin on May 20, 1987, presented another motion to reconsider as well as a motion in opposition to the bank's request for summary judgment. Included also for the first time were Joslin's own motions for summary judgment. Appended to these pleadings were certain documents not previously presented to the trial court or otherwise made a part of the record. The bank opposed the pleading as an improper second motion to reconsider, requesting that the motion be struck.

On June 2, 1987, the trial court issued its final order: (1) denying

the bank's motion to strike Joslin's motion to reconsider; (2) expressly denying that second motion to reconsider; (3) reaffirming all previous rulings and judgments entered regarding the complaint, counterclaim and third-party complaint; (4) denying Joslin's motions for summary judgment against the bank and the village; and (5) entering summary judgment in favor of the bank on count III of the counterclaim.

Joslin on June 18, 1987, filed his notice of appeal from this convoluted sequence of pleadings. A cross-appeal disputing the amount set in interest on the judgment award was filed by the bank the same day.

This appeal presents the following issues: (1) to what extent a court may consider affidavits and deposition transcripts presented for the first time along with a second motion for reconsideration, which were filed only after the cause was remanded by an appellate court based on a nonfinal, nonappealable order; (2) whether Joslin is entitled to summary judgment as a matter of law; (3) whether the trial court erred in striking Joslin's affirmative defense to the bank's complaint; (4) whether summary judgment was properly entered in favor of the bank on its complaint and against Joslin on his counterclaim; (5) whether any purported oral undisclosed agency agreement between the village and Joslin is nullified by operation of the statute of frauds, or is the village estopped from asserting this defense due to the conduct of its two officials; and (6) should statutory post-judgment interest be set starting at the time summary judgment was first granted in favor of the bank, or should it begin to accrue upon the entry of a final judgment award at a later date.

We first construe the propriety of Joslin's second motion for reconsideration filed after dismissal and remand of the original appeal due to lack of a final order resolving all counts and all pleadings. On September 17, 1986, the trial court expressly granted summary judgment in favor of the village on the third-party complaint and in favor of the bank on counts I and II of Joslin's counterclaim. The counterclaim, however, contained three counts. Joslin filed at least one specific motion to reconsider on October 15, 1986, which was subsequently denied. Thereafter the apparent final written judgment order was entered December 23, 1986.

Once this cause was returned to the circuit court upon this court's April 7 dismissal order, the bank immediately moved for summary judgment on count III of the counterclaim. Joslin on May 20, 1987, filed another motion to reconsider. That motion not only opposed entry of summary judgment in favor of the bank on count III, it further requested summary judgment in favor of Joslin and against both the bank and the village. Those parties almost immediately filed respon-

sive pleadings in opposition to Joslin's motion to reconsider and his motions for summary judgment.

Joslin in his argument on appeal relies substantially on additional factual material presented along with the second motion to consider, which included his own affidavit, an affidavit executed by Waganer, and certain excerpts from a deposition transcript. Joslin believes these materials, when considered with all other pleadings, depositions, and exhibits on file, raise issues of material fact which not only preclude entry of summary judgment against him, but may also merit entry of judgment in his favor. The bank and village argue the materials filed along with what is in essence at least a second motion for reconsideration are inappropriate in several respects.

This matter returned to the circuit court because one count of the several pleadings at issue was not completely disposed of by court order. When the cause was remanded, a motion for summary judgment on that remaining count was filed. Only then did Joslin file a second motion for reconsideration as well as motions for summary judgment raising new points and factual allegations in several appended documents. That information, including affidavits and deposition excerpts, could have been made available to the court at least prior to the original hearing on the motions for summary judgment and the subsequent issuance of the December 23, 1986, judgment order. These materials were not even presented along with Joslin's first motion for reconsideration. As in *Artis v. Fibre Metal Products* (1983), 115 Ill. App. 3d 228, 450 N.E.2d 756, we believe heretofore unseen and executed affidavits presented along with a second motion to reconsider should have been raised at an earlier point and were inappropriate for consideration by the trial court. Accordingly, we also shall not consider them now.

Similarly inappropriate were Joslin's motions for summary judgment presented only at the time of his second motion for reconsideration after the original appeal was dismissed. In any event, upon reviewing the facts in the record in the light most favorable to the bank and village as nonmoving parties, we perceive no set of circumstances which would allow for the entry of judgment in Joslin's favor as a matter of law.

■■ ■ Joslin next asserts the trial court erred in striking his affirmative defense to the bank's complaint. Joslin's affirmative defense raised a nebulous "undisclosed agency" theory, asserting he only signed the note and purchased the building on behalf of the village. The trial court on March 19, 1984, allowed the bank's motion to dismiss that affirmative defense, also granting Joslin leave to file an

amended pleading within 21 days. No affirmative defense appears in the record, though. Instead, Joslin's allegations as to his purported agency capacity, and the fact that an officer of the bank told Joslin he would not be liable under the note, are variously stated in Joslin's counterclaim against the bank as well as in his third-party complaint against the village.

We note from the record Joslin failed to raise the propriety of the trial court's dismissal of his affirmative defense until the time he filed his second motion to reconsider after reversal. The affirmative defense itself was never amended, although leave was granted to do so. While this issue might be resolved on the basis of waiver, as the bank has advocated, we determine instead the trial court properly dismissed the affirmative defense on a substantive basis.

Joslin in the affirmative defense asserted an undisclosed agency theory in signing the promissory note. Nowhere in the note is it related that Joslin was acting as an agent for another or even who his principal was. As a general rule an agent may not introduce parol evidence to escape liability on an agreement he signed in his individual capacity, even though he later contends he signed it as undisclosed agent for another party. (*World Insurance Co. v. Smith* (1975), 28 Ill. App. 3d 1022, 329 N.E.2d 518.) Stated another way, where an agent signs a contract in his own name and the contract nowhere mentions the existence of an agency or the identity of the principal, parol evidence is not admissible to denounce the agent's personal liability. (*Kelrick v. Koplin* (1966), 73 Ill. App. 2d 63, 70, 219 N.E.2d 758, 762.) We also note the common law rule which provided that unless there is something on the face of an instrument or in the manner of its signature to create ambiguity or uncertainty, parol evidence is inadmissible to rebut the presumption the person signing the instrument is personally liable thereon. (See *Schwarzwalder v. Waitkoss* (1981), 101 Ill. App. 3d 337, 340, 428 N.E.2d 633, 636.) Because one signing for another without qualification cannot introduce other evidence to alter the capacity in which he signed, we find the affirmative defense based on an agency could not have stood under the circumstances, and the trial court was correct in dismissing it.

The trial court was also correct in entering summary judgment in favor of the bank on its complaint. The bank urges this issue has been waived by Joslin due to his failure to specifically argue the point on appeal. Indeed, nowhere in his brief does Joslin specifically contest the entry of summary judgment in favor of the bank on the complaint except as it relates to the affirmative defense issue. Because alleged errors only commented on and unsupported by substantial argument in a

brief are considered waived on appeal (*Reeder v. Old Oak Town Center* (1984), 124 Ill. App. 3d 1045, 465 N.E.2d 113), the bank submits there is no issue to be reviewed in this regard.

We again decline the invitation to resolve the issue on the basis of waiver alone. It is apparent instead that summary judgment was properly granted in the bank's favor on the complaint. The bank's cause of action sought recovery of principal and interest due on a note signed by Joslin. The note as executed with Joslin's signature was attached. Joslin signed that note in his individual capacity. He did not indicate he was signing as agent for another. Even assuming Joslin was acting in a representative capacity for the village, his signature alone, without signifying that he was an agent or indicating who his principal was, personally obligated him under the note. Since he is personally liable under it, parol evidence is inadmissible to disestablish that obligation, and the bank may look to him for payment or judgment.

Joslin nevertheless maintains reversal is proper on the basis of equitable estoppel. Joslin asks this court to hold the bank is estopped from enforcing the note when it obtained his signature through Waganer's purported representations made as officer of the bank, including "by the strongest assurance that he [Joslin] would not be held liable." For reasons to be noted in greater detail below, we are not persuaded by this contention.

In Joslin's counterclaim against the bank, he alleged certain oral representations were made to him by Waganer in the latter's dual capacity as both village clerk and loan officer of the bank. The counterclaim asserts Waganer represented the bank would furnish the money to purchase the building, the bank would not look to Joslin for repayment of the note, and the village would take title to the building immediately after Joslin's purchase of it. Further, Joslin claimed he relied on these oral promises to his detriment, and the bank breached its "agreement" with him.

In *Central Republic Trust Co. v. Evans* (1941), 378 Ill. 58, 37 N.E.2d 745, it was likewise claimed an executive of a bank made oral representations and statements to certain defendants before they signed a note to the effect the defendants would not be held liable under it. Instead, it was alleged the bank would look elsewhere for payment based on the proceeds of an outside stock repurchase. In holding the defendants liable nevertheless, our supreme court in *Evans* stated:

> "The president of a bank has no authority to bind it except in the discharge of his ordinary duties, and it is not one of his ordinary duties, nor a power inherent in his office, to release

debtors of the bank from the payment of their obligations without a consideration. *** [A]n executive officer of the bank has no implied authority to bind it by a promise that one who signs a note shall not be required to pay it." 378 Ill. at 66, 37 N.E.2d at 749.

See also *Exchange National Bank of Chicago v. Daniels* (7th Cir. 1985), 768 F.2d 140, 143.

Notwithstanding Joslin's claims to the contrary, Waganer did not have the authority to bind his bank to a purported promise not to look to Joslin for payment. Joslin is personally liable under the terms of the note he unconditionally signed. Summary judgment on both the complaint and counterclaim was therefore proper.

Waganer's representations allegedly made in his capacity as village clerk, as well as those purportedly made by Alexander as village manager, are next brought to the forefront in Joslin's amended third-party complaint. Joslin maintains on appeal the trial court erred in entering summary judgment in favor of the village because genuine issues of material fact have been raised under the pleadings. Liberally construing all facts in favor of Joslin as the nonmoving party, certain allegations in the record may be summarized.

As related by the amended third-party complaint, the village at a regular board of trustees meeting in May 1982 "decided to negotiate" for the purchase of a building immediately adjacent to the current village office building. Alexander and Waganer were authorized to acquire the building for a price not to exceed $20,000. The building owner, however, refused to sell to the village at that price, apparently in part due to a soured relationship from previous dealings with the village. Their initial efforts unsuccessful, the village manager and clerk in June 1982 approached Joslin, requesting he act on behalf of the village in acquiring the building. Joslin's alleged agency capacity was to be undisclosed so the building owner would not suspect who was actually behind the purchase. Waganer asserted the bank would initially advance the funds for the purchase. After closing, title would be transferred to the village, with all repayment obligations resting with the village.

Joslin went ahead with the purchase, obligating himself under the note on July 1, 1982, and purchasing the building on July 6. The minutes of a board of trustees meeting conducted September 27, 1982, however, expressly reflect the village's rejection of Joslin's request the building be bought from him. Joslin's third-party complaint concludes he acted reasonably in reliance on the representations made to him, and he had fully performed his agreement to act for the village. The

complaint seeks specific performance ·of the alleged agreement with the village, or alternatively that the village indemnify him from any relief granted the bank under its complaint.

■ As asserted in the village's affirmative defense filed at the trial level, the Statute of Frauds would normally arise to bar Joslin's claim. Pursuant to the statute any contract for the sale of land must be reduced to a written memorandum, either signed by the party to be charged "or some other person *** lawfully authorized in writing, signed by such party." (Ill. Rev. Stat. 1985, ch. 59, par. 2.) Both the statute and case law make it additionally clear that where a contract for the sale of land is purportedly signed by an agent, that agent's authority must also be in writing. (*Leach v. Hazel* (1947), 398 Ill. 33, 74 N.E.2d 797.) Thus, as here, where there is no writing authorizing a purported agent to sign a real estate contract on behalf of another party, the Statute of Frauds is a valid defense. *Cosmopolitan National Bank v. Kobialka* (1980), 85 Ill. App. 3d 1, 3, 406 N.E.2d 150, 151-52.

Two oral contracts are alleged to be in existence here. The first is the agreement whereby Joslin was to act as undisclosed agent for the village. The second is an agreement by which the village was to repurchase the real property from Joslin. The record does not show the existence of any written contracts and the Statute of Frauds precludes the enforceability of any such oral agreements.

■ Reading his argument on appeal in its best possible terms, Joslin still asserts the village, through the conduct of its two officers, is equitably estopped from relying on the statute as a defense. Estoppel will generally arise where a party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, and where the one guilty of the expressions or conduct should not be allowed to deny his utterances or acts to the loss of the innocent party. (*Kenny Construction Co. v. Metropolitan Sanitary District* (1971), 52 Ill. 2d 187, 197, 288 N.E.2d 1, 7.) Stated another way, a party will be estopped from denying the enforceability of an agreement where that party's actions induced justifiable reliance on behalf of another, and grave injustice would result if a remedy was not afforded. *Lincolnland Properties, Inc. v. Butterworth Apartments, Inc.* (1978), 65 Ill. App. 3d 907, 912, 382 N.E.2d 1250, 1255.

While the doctrine of estoppel has been held applicable to municipal corporations (*Gregory v. City of Wheaton* (1961), 23 Ill. 2d 402, 178 N.E.2d 358), a finding of estoppel against a public body is not favored (*County of Cook v. Patka* (1980), 85 Ill. App. 3d 5, 405 N.E.2d 1376). Whether the doctrine may in fact be applied in a given case against a

municipal corporation depends upon a consideration of all surrounding circumstances. (*City of Chicago v. Sievert Electric Co.* (1985), 134 Ill. App. 3d 552, 481 N.E.2d 1.) Estoppel against a public body should not be invoked except "under compelling circumstances," where to do so would not defeat the operation of public policy. *People ex rel. Brown v. Illinois State Troopers Lodge No. 41* (1972), 7 Ill. App. 3d 98, 105, 286 N.E.2d 524, 528.

As the doctrine has developed, two essential prerequisites must be shown in order to invoke estoppel against a municipality: (1) an affirmative act on the part of the municipality; and (2) the inducement of substantial reliance by the affirmative act. (*Amalgamated Trust & Savings Bank v. Village of Glenview* (1981), 98 Ill. App. 3d 254, 261, 423 N.E.2d 1230, 1235.) While fraud is not a necessary element of estoppel, it is still essential there be fraudulent intent on the part of the party against whom estoppel is sought. (*Lincolnland Properties*, 65 Ill. App. 3d 907, 382 N.E.2d 1250.) The "affirmative acts" of a body which may cause the estoppel doctrine to be applied against it are those acts which have caused another to take steps that have created a situation where it would be inequitable and unjust to permit the public body to, in effect, retract what it had previously done. (*New-Mark Builders, Inc. v. City of Aurora* (1967), 90 Ill. App. 2d 98, 102, 233 N.E.2d 44, 46.) Those affirmative acts which will induce substantial reliance by another party for estoppel purposes must be the acts of the municipality itself, such as legislation, rather than the unauthorized actions of a ministerial officer. (*American National Bank & Trust Co. v. Village of Arlington Heights* (1983), 115 Ill. App. 3d 342, 450 N.E.2d 898.) Normally, a city or village cannot be estopped by an act of its agent beyond the authority expressly conferred upon that official, or made in derogation of statute. *Ganley v. City of Chicago* (1980), 81 Ill. App. 3d 877, 401 N.E.2d 1184.

Nothing in the record indicates the village clerk or manager were ever granted authority to enter into an undisclosed agency agreement with a third party, or to bind the village to a contract to repurchase real property from that third party. According to Joslin's own pleadings, the village clerk and manager were to negotiate for the purchase of the building for a certain price. Any such contracts were presumably subject to final approval by the village board. The Illinois Municipal Code, which sets forth in general terms the general duties and powers of both a municipal clerk and a municipal manager, does not provide they may contract for the purchase of real property. (See Ill. Rev. Stat. 1985, ch. 24, par. 3—10—7 (duties of the clerk); Ill. Rev. Stat. 1985, ch. 24, par. 5—3—7 (powers and duties of the appointed

municipal manager).) Moreover, a village of Pawnee ordinance only authorizes the village manager to supervise purchases of equipment and supplies not exceeding $5,000. (Village of Pawnee, Ill., Municipal Code par. 81—1 (1981), amending ordinance No. 74—15 (1974).) Nowhere does the ordinance mention the village manager or clerk may either independently contract to purchase land or enter into an agreement with another to purchase land on behalf of the municipality.

●9 The municipal officers here involved were not possessed of the authority to enter into binding contracts for the purchase of land from an intermediary, or to enter into an undisclosed agency agreement. Further reviewing the Illinois Municipal Code, that statute states corporate authorities of a municipality have the express power to purchase real estate for public purposes only through contract (Ill. Rev. Stat. 1985, ch. 24, par. 11—61—3), and they may enter such contracts only "by ordinance adopted by an affirmative vote of two-thirds of the elected corporate authorities then holding office." (Ill. Rev. Stat. 1985, ch. 24, par. 11—76.1—1.) Because a municipality like the village may contract only by passage of an ordinance (*Tecumseh International Corp. v. City of Springfield* (1979), 70 Ill. App. 3d 101, 106, 388 N.E.2d 460, 463), any previously negotiated agreement requires subsequent approval by the full board.

No ordinance to buy the building in question was enacted here. There was no subsequent approval by the elected village officials of the agreements purportedly entered into between Joslin, Alexander, and Waganer. Indeed, the contrary is apparent. The minutes of a board meeting held September 27, 1982, reflect the fact a motion to purchase the building was defeated by a 5 to 1 vote. In sum, while the village manager and clerk could enter negotiations and extend offers, such actions would still have to be accepted by affirmative vote of the board to bind the village.

Undoubtedly Joslin acted improvidently in this scenario. Yet one who deals with a governmental body is at risk of having accurately ascertained that those who purport to act for that body stay within the bounds of their authority. (*Lake Shore Riding Academy, Inc. v. Daley* (1976), 38 Ill. App. 3d 1000, 350 N.E.2d 17.) A person dealing with a municipal corporation "is charged with the knowledge of the limitations of the power of that corporation for any contract attempted to be entered into by any of its officials." (*May v. City of Chicago* (1906), 222 Ill. 595, 599-600, 78 N.E. 912, 913.) Where an employee of a municipal corporation purports to bind the municipality by contract, without approval or authority, such a contract is "utterly void," and cannot be validated by principles of estoppel. *D. C. Consulting Engineers, Inc. v.*

*Batavia Park District* (1986), 143 Ill. App. 3d 60, 492 N.E.2d 1000.

■■ We therefore hold the village was not estopped to deny the unenforceability of the alleged contracts under the statute of frauds, and summary judgment was properly granted in favor of the village on Joslin's third-party complaint.

■■ Finally we consider the bank's cross-appeal from that portion of the judgment award entered against Joslin in the primary action which computed interest at the statutory rate of 9% beginning from the date summary judgment was granted on May 23, 1984. The bank argues the statutory interest rate should not have accrued until the final judgment order of December 23, 1986.

The promissory note at issue called for an interest rate of 15% per annum. However, where a debt is merged into a judgment or decree, the contract ceases to exist and the rate of interest is thereafter controlled by statute. (See *United States Mortgage Co. v. Sperry* (1891), 138 U.S. 313, 34 L. Ed. 969, 11 S. Ct. 321.) The relevant Illinois statute provides in the normal case for interest on judgments to be set at 9% "from the date of a judgment until satisfied." The question then becomes when judgment against Joslin was rendered sufficient to invoke accrual of the statutory interest, as opposed to the higher contractual interest rate.

By docket entry dated May 23, 1984, the trial court made the following ruling:

> "Plaintiff's motion for summary judgment as to defendant Joslin argued and allowed. *Execution is stayed* until further order of the Court. *Cause continued for written judgment order.*" (Emphasis added.)

The court by its judgment order entered December 23, 1986, set interest at the statutory post-judgment rate of 9% during the period running from May 23, 1984, until December 22, 1986. The bank argues the May 23, 1984, ruling, which granted summary judgment while staying execution until further written order, was not a final decision determining the rights and obligations of the parties, particularly since the court had not yet ascertained damages. Therefore the bank maintains interest should have been computed at the 15% contractual rate until the December 23, 1986, final judgment order.

Joslin counters that the May 1984 grant of summary judgment was in fact an order of judgment; it was only execution which was stayed pending resolution of all other matters. Joslin also suggests since normal practice allows for the prevailing party to prepare a written judgment order, that party might delay in doing so long enough to benefit from the greater interest rate set under a contract during that period

of time. According to his theory, statutory interest should begin to accrue at the time of any judgment, including that of a summary nature, and would be computed later in assessing damages when a final judgment is entered.

The interest on judgment statute provides in relevant part that the statutory rate shall be computed from the time "[w]hen judgment is entered upon any award, report or verdict." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 110, par. 2—1303.) Supreme Court Rule 272 expressly provides the following concerning when a judgment is entered:

> "If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by him, the clerk shall make a notation to that effect *and the judgment becomes final only when the signed judgment is filed.* If no such signed written judgment is to be filed, the judge or clerk shall forthwith make a notation of judgment and enter the judgment of record promptly, and the judgment is entered at the time it is entered of record." (Emphasis added.) 107 Ill. 2d R. 272.

In comparing these two provisions, a judgment is entered only when finalized and signed. Here, the May 23, 1984, docket entry expressly provided the cause was continued for written judgment order. The order did not become final until it was actually entered by written judgment on December 23, 1986. Only at this point would the statutory interest rate begin to run. The rate as expressed under the note would continue until this time.

We are aware of the advantage to the bank under the circumstances. Yet our finding is mandated if our statutes and supreme court rules are to remain consistent concerning the time at which a final judgment is rendered. Although, as Joslin stresses, the normal practice is for the prevailing party to compose and present a written judgment order for the court, there is nothing which precluded Joslin from preparing such an order had he wished to avoid the higher contractual interest rate.

We therefore reverse and remand for a recalculation of the interest on the judgment award. We affirm on all issues of liability.

Affirmed in part; reversed in part and remanded.

McCULLOUGH and LUND, JJ., concur.