THE CITY OF CHICAGO, Plaintiff-Appellee, v. UNIT ONE CORPORATION, Defendant-Appellant.

First District (4th Division)   No. 1—90—1383

Opinion filed August 1, 1991.

Barry B. Nekritz, Stephen M. Dorfman, and Phillip J. Zisook, all of Altheimer & Gray, of Chicago, for appellant.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal and Mardell Nereim, Assistant Corporation Counsel, of counsel), for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The City of Chicago (City) filed a complaint against Unit One Corporation, owner of commercial space in a building on Lake Shore Drive, alleging that certain commercial signs on the exterior wall of the building violated the Chicago Zoning Ordinance. (Chicago Municipal Code ch. 194A, art. 7, §§7.3—7, 7.10—1, 7.10—7 (1989).) Unit One responded with a counterclaim and affirmative defense in which it argued that the City was estopped from enforcing the zoning ordinance against Unit One because Unit One had detrimentally relied on the fact that the City had issued permits for the signs in question for the preceding 15 years. Unit One also alleged that the City was attempt-

ing to enforce the ordinance in an impermissibly selective manner. The circuit court entered judgment for the City and against Unit One. Unit One appeals from the court's order.

The parties agree to the following facts. The commercial signs at issue were displayed on the exterior wall of Harbor House Condominium, a building on North Lake Shore Drive. Commercial space in the building was owned by Unit One, which leased the space to commercial tenants. As part of the commercial lease agreements, the tenants displayed their signs on the exterior wall of the Harbor House Building. The display of the signs was in violation of the Chicago Zoning Ordinance because contrary to the limitations of the ordinance, the signs were larger than 18 by 18 inches, contained more colors than two, and were illuminated. (Chicago Municipal Code ch. 194A, art. 7, §7.10—7 (1989).) Similar signs had been continually present at the same location since 1973. In a 15-year period, between February 1973 and May 1988, the City issued sign permits for the signs in question. Each of the permits was stamped with the following language:

"CONFORMS TO ZONING ORDINANCE

This Approval of Application for license shall not be held to permit or be an approval of any Violation of the provisions of the Chicago Zoning Ordinance."

The stamps were initialed by the zoning administrator or his agent.

Because the City continually issued permits for the signs, the board of managers believed the signs were legal. The board never investigated to determine otherwise. Unit One used the availability of the signs as a feature to attract commercial tenants. Neighborhood and parking congestion contributed to Unit One's difficulty in attracting commercial tenants. Many commercial tenants insisted that the right to maintain the exterior signs be a part of their contract. In addition, the availability of commercial enterprises in the building was used as a selling point with residential tenants.

There were periods of time when the commercial spaces in the building remained vacant. One space remained vacant for one year. At least one business, a restaurant that had leased space and utilized the signs for advertising, went out of business. The same restaurant space was leased at least three other times during the period in question. Another commercial unit turned over three times in one year. Each of these businesses used the commercial signs available on the exterior wall of the building.

After the City initiated its action against Unit One, the leases the company executed provided rent concessions and allowances for the tenants to terminate if the right to maintain signs was revoked as a

consequence of the City's suit. In the opinion of two former members of the board of managers, Unit One would be unable to continue to attract commercial tenants if it were not allowed to maintain the exterior wall signs. The commercial space is not suitable for residential use, and converting it to other nonresidential use would involve monetary expense.

As the City pursued its action against Unit One, there remained other commercial signs in the area that were in apparent violation of the sign ordinance, but with respect to which the City had initiated no action. It was unknown how many of these signs may have been "grandfathered in": legal because they were in existence before the ordinance was adopted in 1957. The Chicago zoning administrator indicated that there are thousands of nonconforming signs in the City, and the four City zoning inspectors are engaged in an ongoing process of surveying the entire city to identify the violations.

The parties do not dispute that the signs in question in this case were in violation of the City's zoning ordinance. It is also uncontroverted that the City issued permits for the signs over a period of 15 years. It is Unit One's theory that the City should be estopped from enforcing the ordinance against Unit One because the City has through its action ratified the issuance of the sign permits and Unit One has relied to its detriment on the City's action.

For support, Unit One cites to *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 171 N.E.2d 605. In *Cities Service*, the City of Des Plaines issued in error a permit for the construction of a gas station. The city also provided to the plaintiff a copy of an outdated ordinance under the terms of which the plaintiff's proposed gas station was in compliance. Seven months later the city revoked the permit. In the meantime, relying on the permit and the apparent acquiescence of city officials, the plaintiff had purchased the subject property and expended a large sum of money installing permanent parts of the structure. The supreme court determined that under the special facts and circumstances of the case, the city was estopped from revoking the permit. The court noted that while as a general rule a citizen has the responsibility of informing himself of existing ordinances, where the city had allowed construction to go forward for seven months before revoking the permit, the plaintiff could reasonably infer that the issuance of the permit had been ratified. The court in *Emerald Home Builders, Inc. v. Kolton* (1973), 11 Ill. App. 3d 888, 298 N.E.2d 275, relying on the decision in *Cities Service*, came to a similar conclusion in determining that the City of Chicago was estopped from revoking a building permit one month after construc-

tion had begun, where plaintiff had spent $15,560, including the cost of the real estate, in reliance upon the erroneously issued permit.

■■ We do not believe that the case at bar presents the special facts and circumstances which were determinative in *Cities Service* and *Emerald Home Builders*. As stated in *Cities Service*, the general rule is that a municipality will not be estopped from enforcing a public right, absent special circumstances that would make it highly inequitable or oppressive to do so. Those who deal with governmental bodies take the risk of "having accurately ascertained that he who purports to act for [the body] stays within the bounds of his authority." (*Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 160-61, 171 N.E.2d 605, 607.) If the unauthorized acts of a governmental employee are allowed to bind a municipality through equitable estoppel, the municipality would remain helpless to correct errors and forced to permit violations "to remain in perpetuity." (*Lake Shore Riding Academy, Inc. v. Daley* (1976), 38 Ill. App. 3d 1000, 1003, 350 N.E.2d 17, 20.) For this reason, estoppel against a public body should not be invoked except in compelling circumstances. *Bank of Pawnee v. Joslin* (1988), 166 Ill. App. 3d 927, 521 N.E.2d 1177.

■■ In order to invoke estoppel against a municipality, a party must show that its action was induced by the conduct of municipal officers and that in the absence of estoppel relief, substantial loss to the party will occur. (*Cities Service*, 21 Ill. 2d 157, 171 N.E.2d 605.) In the present case, we do not believe that Unit One has met this necessary criteria. Unit One argues that by issuing the sign permits over a period of 15 years, stating through its stamp that the signs "conformed with the zoning ordinance," and allowing the signs to be openly and continuously displayed, the City through its conduct ratified the issuance of the permits. However, the mere issuance of an unauthorized permit and detrimental reliance thereon do not in themselves provide grounds for relief. (*Cities Service*, 21 Ill. 2d 157, 171 N.E.2d 605.) We believe this rule generally applies even where the municipality has issued repeated permits as in the present case.

■■ In *Cities Service*, a case upon which Unit One relies heavily, the court found that in failing to revoke a permit until seven months after its issuance, the municipality had in effect ratified the permit. However, in *Cities Service*, a case decided upon its particular facts and circumstances, the court found that the municipality, in giving the plaintiff a copy of an outdated ordinance, had induced the plaintiff into believing that he was proceeding in accordance with the law. (See *O'Laughlin v. City of Chicago* (1976), 65 Ill. 2d 183, 357 N.E.2d 472 (distinguishing *Cities Service*).) The lapse of time in itself does not

provide the compelling circumstances that justify application of the estoppel doctrine. *La Salle National Bank & Trust Co. v. City of Chicago* (1984), 128 Ill. App. 3d 656, 470 N.E.2d 1239.

■ In the present case, there is no special circumstance indicating that the City actively misled or induced Unit One into believing no violation of the sign ordinance was involved. In fact, the permit stamp to which Unit One refers also contained the following language: "This Approval of Application for license shall not be held to permit or be an approval of any Violation of the provisions of the Chicago Zoning Ordinance." As a rule, every entity is charged with the responsibility of knowing the limitations of any ordinance under which it is subject. (See *Cities Service*, 21 Ill. 2d 157, 171 N.E.2d 605.) Under the circumstances of the present case, we do not believe Unit One has shown that it should be relieved of this responsibility.

Nor do we believe Unit One has shown substantial reliance on the sign permits such that it would be inequitable and unjust at this point for the City to enforce the sign ordinance. (*Bank of Pawnee v. Joslin* (1988), 166 Ill. App. 3d 927, 521 N.E.2d 1177.) Unlike the plaintiff in *Cities Service*, who purchased property and began construction in reliance upon the erroneously issued permit, Unit One has not shown that it substantially changed its position because of the unauthorized sign permits. The condominium building was not constructed in reliance upon the belief that commercial signs would be permitted. Nor is there any indication that the commercial space in the building was designed in reliance upon the sign permits.

In alleging that without sign permits it will be unable to attract or retain commercial lessees, Unit One is directing its complaint against the ordinance itself, and not the City's error in failing to properly administer it. That Unit One will now be disfranchised of an advantage to which it had no right in the first place is not the type of loss upon which the concept of estoppel is focused. The fact that the sign ordinance will now be enforced leaves Unit One in the same position it would have been in had it complied with the law in the first place. Therefore, we do not believe that the circuit court's finding that Unit One failed to show substantial loss in reliance upon the sign permits was against the manifest weight of the evidence. Accordingly, the City should not be estopped from enforcing the zoning ordinance.

■ Unit One also argues that because at the time of the instant trial the City had failed to initiate action against other obvious violators of the sign ordinance, the City in prosecuting Unit One has engaged in impermissible selective enforcement of the ordinance. We do not believe that the fact that Unit One was prosecuted while others

were not is enough to establish a claim of selective prosecution. To invoke the claim of selective prosecution, the complaining party must prove that the selection was based on some invidious classification. (See *City of Collinsville v. Seiber* (1980), 82 Ill. App. 3d 719, 403 N.E.2d 90.) Unit One has made no such assertion. Further, the City admitted that the present case represents a test of its power to prosecute violations despite having erroneously issued permits, and that due to limited resources, the process of seeking out and prosecuting violators is a lengthy one. In the meantime, as long as its enforcement methods are not based upon impermissible classifications, the City does not violate equal protection rights, even where it is unequal or arbitrary in the administration of its power. (*Wundsam v. Gilna* (1981), 97 Ill. App. 3d 569, 422 N.E.2d 1109.) For these reasons, the ruling of the circuit court is affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.